AARON HARRIS, Plaintiff in Error, v. THE PEOPLE, Defendants in Error.

Under the provision of the act of 1873 to reorganize the local government of the city of New York (§ 76, chap. 335, Laws of 1873), providing for investigations as to the origin of fires in the city, the fire marshal has all the power as to such investigations conferred upon the superintendent of police by the act of 1852 (§ 1, chap. 332, Laws of 1852), as amended in 1857 (§ 37, chap. 569, Laws of 1857), and also the authority conferred upon the metropolitan fire marshal by the act of 1868 (chap. 563, Laws of 1868).

The fire marshal has jurisdiction under said statutes to institute an investigation as to the circumstances of a fire in the city without a complaint being made to him. The only fact necessary to call into exercise his jurisdiction is that the fire has occurred.

In an indictment for perjury alleged to have been committed on an investigation before the fire marshal, it was alleged that the accused swore there were 60,000 cigars in the building at the time of the fire. The proof was that he swore there were 65,000 cigars. This was one of various items of property as to which the accused was charged with having sworn falsely. On error it was objected that there was a fatal variance between the indictment and the proof. The objection was not taken on the trial. *Held*, that it was not available here, as if made upon the trial, the evidence as to this item could have been excluded or waived, and the jury directed to disregard it, and the conviction could have been sustained upon the proof as to the other items. Also, *held*, that the variance was not material.

When an indictment charges that the accused has sworn falsely as to several facts, it is not necessary to prove all that is charged. It is sufficient to prove enough to make out the offence.

There were two counts in the indictment, the first charging perjury in the oral testimony given before the fire marshal, and the other perjury in swearing to an affidavit before the same officer, containing in substance the same matters as testified to orally.

The jury found the prisoner not guilty under the first count and guilty under the second. It was claimed that the verdict was inconsistent. It appeared that a portion of the oral testimony was taken when the fire marshal was not present. *Held*, that the objection was untenable, as the jury may have found that the oral testimony alleged to be false was not taken before the marshal.

(Argued January 26, 1876; decided February 8, 1876.)

ERROR to the General Term of the Supreme Court in the first judicial department to review judgment affirming a

Statement of case.

judgment of the Court of General Sessions of the city and county of New York, entered upon a verdict convicting plaintiff in error of the crime of perjury. (Reported below 4 Hun, 1.)

The plaintiff in error was indicted for perjury alleged to have been committed by him upon an investigation before the fire marshal of the city of New York as to the origin of a fire which had occurred in the said city. The indictment contained two counts, one charging perjury in the oral testimony given by plaintiff in error, the other perjury in an affidavit sworn to by him. The facts alleged to have been sworn to, and which were charged to be false, were similar in both counts, among others that the accused falsely swore that at the time of the fire there was upon the premises "a stock consisting of 60,000 cigars, 185,000 cigarettes, 400 pounds weight of Havana tobacco, of the value of one dollar and fifty cents each pound, and 645 pounds of Virginia tobacco of the value of sixty-five cents each pound."

Upon the trial it was proved that the accused swore that there were 65,000 cigars, and the other items of property stated, upon the premises.

The other facts pertinent to the questions presented sufficiently appear in the opinion.

The jury found the accused not guilty upon the first count and guilty upon the second.

*Ira Shafer* for the plaintiff in error. The fire marshal had no power or authority to administer the oath to Harris. (Laws 1873, chap. 335, §§ 76, 504; Laws 1870, p. 899, § 114; Laws 1868, chap. 563; Laws 1871, p. 1277, § 4; 2 R. S. [5th ed], 990, § 19; id., 681, § 1; 3 id., pp. 993, 999; Barb. Cr. Law [2d ed.], 519, 529, 122, 193.) The variance between the indictment and proof was fatal. (Rosc. Ev. [5th Am. ed.], 816, 820; *Taylor's Case*, 1 Campb., 404.) The two counts of the indictment charged the same offence. (Barb. Cr. Law, 339, 340; *People* v. *Wright*, 9 Wend., 193; *Kane* v. *People*, 8 id., 203; 12 id., 425.) The verdict was repugnant, inconsistent and

void. (Barb. Cr. Law, 361; 1 Chit. Cr. Law, 690; 6 Hawk., ch. 4, § 8, p. 202; Stark., 332, 333; *O'Connell* v. *The Queen*, 11 Cl. & F., 155; *Hayworth* v. *State*, 14 Ind., 590; *State* v. *McCue*, 39 Mo., 112; *People* v. *Ah Fe*, 31 Cal., 951; *Guenther* v. *People*, 27 N. Y., 100; *State* v. *Lorumbo*, Harper [Va.], 183; *Allen* v. *Foster*, 9 Foster [N. H.], 163; *Jewitt* v. *Davis*, 6 N. H., 518; *Holman* v. *Kingsbury*, 9 id., 109; *Coffin* v. *Jones*, 11 Rich., 95; *Brunswick* v. *McKean*, 4 Greenl., 508; *Hurley* v. *State of Ohio*, 6 Ohio, 399, 403, 404; Jones R., 163; Caines' Ab., 978.)

*Benj. K. Phelps*, district attorney, for the defendants in error. The fire marshal had power to administer the oath to the plaintiff in error. (Laws 1870, chap. 383, § 44; Laws 1873, chap. 335, § 76.) There was no material variance between the charges of the indictment and the proof. (*People* v. *Warner*, 5 Wend., 271; *Tuttle* v. *People*, 36 N. Y., 431; *Tomlinson's Case*, 4 C. H. Rec., 125.)

EARL, J. The plaintiff in error was convicted of perjury in the General Sessions of the city and county of New York, and was sentenced to ten years imprisonment in the State prison. The perjury is alleged, in the indictment, to have been committed on the 13th day of September, 1873, before George H. Sheldon, fire marshal of the city, who was, at the time, investigating the cause, origin and circumstances of a fire which occurred on the 5th day of September, 1873, in a building occupied by Harris and his partner as a tobacco manufactory.

Upon the investigation, Harris swore that at the time of the fire he was not in the city of New York, but that he was in the city of Troy. He also swore that, at the time of the fire, there was in the building a stock, belonging to him and his copartner, consisting of 65,000 cigars; 185,000 cigarettes; 400 pounds of Havana tobacco, of the value of one dollar and fifty cents per pound; 645 pounds of Virginia tobacco, of the value of sixty-five cents per pound; and that he and

his partner sustained a loss by the fire of betweeen $5,000 and $6,000. The facts thus sworn to were alleged in the indictment to have been false, and evidence was given upon the trial tending to show that they were all false.

It was claimed upon the trial, on behalf of the prisoner, that the fire marshal had no power or authority to administer an oath to Harris, and this is the first ground of error alleged here. To show that it has no foundation, little more is needed than to bring together the statutes relating to the powers and duties of the fire marshal.

It was provided, by section 1, chapter 332 of the Laws of 1852, as amended by section 36, chapter 569 of the Laws of 1857, that the general superintendent of police of the city of New York was " authorized and required to make an investigation into the origin of every fire occurring in said city," and for that purpose he was invested with the same powers and jurisdiction as were possessed by the police justices of the city. The police justices had jurisdiction, upon complaint made to them, to subpœna and swear witnesses for the purpose of ascertaining whether any crime had been committed. (2 R. S., 707.) In 1868 (chap. 563) an act was passed creating the " office of metropolitan fire marshal, and prescribing its powers and duties." He was to be appointed by the board of metropolitan police. And section 2 made it his duty " to examine into the cause, circumstances and origin of fires by which any building, vessels, vehicles or any valuable personal property shall be accidentally or unlawfully burned, destroyed, lost or damaged, wholly or partially; and to especially inquire and examine whether the fire was the result of carelessness or the act of an incendiary." He was directed to take the testimony, on oath, of all persons supposed to be cognizant of any facts or to have means of knowledge in relation to the matter to be examined and inquired into, and to cause the same to be reduced to writing and verified. By section 3, he was empowered to issue a notice, in the nature of a subpœna, to compel the attendance of any person, as a witness, before him to testify in relation

to any matter the subject of inquiry and investigation by him. He was authorized to administer oaths to the witnesses, and it was provided that false swearing in any matter or proceeding before him should be deemed perjury, and punishable as such. The next statute upon the subject was passed in 1870 (chap. 383, § 21), and simply provided that the board of police of the city of New York should have the power to appoint a fire marshal, who should have the like powers and perform the like duties as those provided by the statute of 1868 above referred to. In 1871, by section 4, chapter 584, it was provided that all the provisions of the statute of 1868 " creating the office of metropolitan fire marshal, and prescribing the powers and duties thereof, shall be and remain in force so far as applicable ; " and that " for the purpose of investigating the origin of fires, incendiary or otherwise, and bringing to punishment the parties guilty of arson, the said fire marshal is hereby invested with the same powers and jurisdiction as were heretofore conferred upon the superintendent of police of the city of New York in relation thereto " under the statute of 1852, as amended in 1857, above referred to. By section 76, chapter 335 of the Laws of 1873, an act to reorganize the local government of the city of New York, it was provided as follows : " Another bureau shall be charged with the investigation of the origin and causes of fires, the principal officer of which shall be called fire marshal, who shall possess all the powers and duties now possessed and performed by the fire marshal appointed pursuant to chapter 383, Laws of 1870, and chapter 584, Laws of 1871, and the acts amendatory or supplementary thereof."

The claim made on behalf of the plaintiff in error is, that under these statutes the fire marshal had no authority to institute an investigation and inquiry into the circumstances of a fire without a complaint is first made to him. It is entirely clear, however, from the language used, as well as from a consideration of the purposes of the statutes, that a complaint is not necessary to call into action the powers of the fire

marshal.   He has all the authority conferred by the statute of 1852, as amended in 1857, upon the superintendent of police.   That statute conferred the authority and imposed the duty to investigate.   No complaint was necessary, but in conducting the investigation the superintendent was invested with the powers and jurisdiction of police justices, and they had authority to subpœna witnesses and swear them.   He also had the authority conferred by the statute of 1868, which made it his duty to institute the investigation, and did not impose, as a preliminary, any complaint.   These statutes were a portion of the police regulations for the city.   Their design was to protect the city against fires, both accidental and incendiary, and an officer was clothed with ample powers to accomplish the purpose, and the only thing required to call into exercise his jurisdiction was a fire within the city limits.

It is also claimed that there was a fatal variance between the indictment and the proof, in that the indictment alleges that Harris swore before the fire marshal that there were 60,000 cigars in the building at the time of the fire, whereas the proof showed that he swore that there were 65,000. This objection was in no form made at the trial, and therefore cannot avail here.   If it had been made, the evidence as to that item could have been excluded or waived, or the judge could have instructed the jury to disregard the evidence, and there would still have been enough to uphold a conviction.   The variance was as to one of a number of distinct items as to which Harris was charged with swearing falsely, and if the jury had found that he swore falsely as to the other items, or as to any one of them, a verdict of guilty would have been proper.   Where an indictment charges that the prisoner has stolen a number of articles, or has inflicted a number of blows, or has obtained goods by a number of false pretences, or has sworn falsely in an affidavit as to several facts, it is not necessary to prove all that is charged.   It is sufficient to prove enough to make out the offence charged. (3 Russell on Cr. [4th Lond. ed.], 105 ; *Reg.* v. *Rhodes*, 2 Lord Ray., 886 ; 3 Starkie's Ev., 860 ; *Tomlinson's Case*,

4 City Hall Rec., 125; Roscoe's Cr. Ev. [6th Am. ed.], 763.)

We are also of opinion that the variance was not material, and could be disregarded. And, for the purpose of testing this question, we must treat the case as if the indictment contained no other charge of perjury. The strictness of the ancient rule as to variance between the proof and the indictment has been much relaxed in modern times. Variances are regarded as material, because they may mislead a prisoner in making his defence, and because they may expose him to the danger of being again put in jeopardy for the same offence. The variance here could present no such difficulty. The indictment charged him with swearing falsely that he had 60,000 cigars in the building when, in fact, he swore that he had 65,000 there — a mistake in his favor. The falsehood did not consist so much in swearing to the precise number, for as to that he could be innocently mistaken, and preciseness was not important, but it consisted in swearing to a much larger number than he had. If the indictment had charged him with swearing falsely that there were 65,000, and he had proved that he actually had in his building 60,000, his oath would, considering the purpose for which and the circumstances under which it was given, have been regarded as substantially true, and the variance immaterial. (*People* v. *Warner*, 5 Wend., 271.)

There were two counts in the indictment, the first charging perjury in the oral testimony given before the fire marshal, and the second charging perjury in swearing to an affidavit before the same officer, containing, in substance, the same matters testified to orally. The jury found the prisoner not guilty under the first count, and guilty under the second count. It is now claimed that the verdict was repugnant, inconsistent and void; that the prisoner could not be innocent under the first count and guilty under the second. The facts do not warrant the claim made. The two counts were not alike. The first was for oral false swearing, and the second was for false swearing in the affidavit. The fire mar-

shal was not present when the oral evidence was all given. The material facts of the oral evidence may have been taken by his assistant in his absence; and hence the jury may have well found that, as to the oral evidence, the false swearing charged did not take place before the fire marshal, and hence that the prisoner was not guilty as to that; and hence there is no repugnancy or inconsistency in the verdict of guilty under the second count based upon the affidavit.

Having thus carefully considered all the objections to which our attention has been called, we have reached the conclusion that the conviction must be affirmed.

All concur.

Judgment affirmed..