# Cases

# FIRST DEPARTMENT,

AT

# GENERAL TERM,

## July, 1878.

---

ROBERT L. CASE, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

*Affidavit — qualifying words " knowledge and belief" at end of — how applied — Insurance department —what statements must be filed therein —how construed.*

In compliance with the requirements of section 12, chap. 463 of 1853, the plaintiff in error, as president, and one Allen, as secretary, of a life insurance company, prepared a statement purporting to exhibit, among other things, the assets of the company at the close of the year 1875, and caused the same to be filed with the superintendent of the insurance department. The statement was verified by the following affidavit :

"STATE OF NEW YORK, CITY OF NEW YORK, *ss :*

"Robert L. Case, president, and Isaac H. Allen, secretary, of the Security Life Insurance and Annuity Company, being duly sworn, depose and say, and each for himself says, that they are the above described officers of the said company, and that on the thirty-first day of December last all the above described assets were the absolute property of the said company, free and clear from any liens or claims thereon, except as above stated ; and that the foregoing statement, with the schedules and explanations hereunto annexed and by them subscribed, are a full and correct exhibit of all the liabilities,· and of the income and disbursements, and of the general conditions and affairs of the said company on the said thirty-first day of December last, and for the

year ending on that day, according to the best of their information, knowledge and belief, respectively.

"ROBERT L. CASE,

"I. H. ALLEN, *Secretary.*

"Subscribed and sworn to before me, this
  19th day of February, A. D., 1876.

[L. S.]          "MOSES B. MACLAY, Notary Public for the City of New York."

Upon the trial of the plaintiff in error for perjury in swearing to this affidavit, *held*, that the words, "according to the best of their information, knowledge and belief, respectively," only served to qualify so much of the said affidavit as was subsequent to the semi-colon, and that as to those statements which preceded the semi-colon the affidavit was absolute and unqualified.

Since the passage of chapter 366 of 1859 creating the insurance department, the statement required by chapter 463 of 1853 to be filed in the office of the comptroller of the State must be filed with the superintendent of the insurance department.

Such statement is required to show, among other things, the "amount of assets, and manner in which they are invested, specifying what amount in real estate, on bond and mortgage, stocks, loans on stocks, premium notes, credits, or other securities." The statement filed contained the following:

"IV.   ASSETS.
"AS PER LEDGER ACCOUNTS.

| | |
|---|---|
| "1. (*a*) *Cost* value of real estate exclusive of all incumbrances, as per schedule A............................................................. | $460,875 00 |
| "6. (*c*) *Cost* value of bonds and stocks owned absolutely, as per schedule E.................................................................... | 592,197 75 |
| "7. Cash in company's office................................................. | 32,818 11 |
| "8. Cash deposited in banks................................................. | 172,890 57." |

*Held*, that the plaintiff in error must be assumed to have taken upon himself the responsibility of stating, under oath, that he personally knew that these assets of the company existed as therein stated, and not simply that the ledger of the company indicated their existence.

WRIT OF ERROR to the Court of Oyer and Terminer, to review the conviction of the plaintiff in error of perjury.

*A. S. Sullivan* and *C. H. Winfield*, for the plaintiff in error.

*B. K. Phelps*, district attorney, for the defendant in error.

INGALLS, P. J.:

The plaintiff in error was tried upon an indictment for perjury and convicted at a Court of Oyer and Terminer, held in and for the city and county of New York, on the 12th day of November, 1877. He was president of a corporation known as "The

Security Life Insurance and Annuity Company," duly incorporated and transacting business in the city of New York. The plaintiff in error, in conjunction with Isaac H. Allen, who was the secretary of said company, prepared a statement purporting to exhibit, among other things, the assets of such company at the close of the year 1875, and the manner they were invested, and caused the same to be filed with the superintendent of the insurance department at the city of Albany, in compliance with the requirement of Vol. 2 R. S. p. 770, § 74 (5th ed). Such statement purported to have been sworn to by such president and secretary before Moses B. McClay, a notary public of the city and county of New York. The statement was conveyed to and deposited in the office of the superintendent of the insurance department by Robert L. Case, Jr., the son of the plaintiff in error, and the actuary of such company. Such statement showed a surplus in favor of the company of nearly three millions of dollars. In the month of November, 1876, upon examination, the company was found to be insolvent to the extent of two millions of dollars. The evidence shows that when the statement was filed in the insurance department the company was hopelessly insolvent, and the statement untrue in regard to there being any surplus in favor of such company. The affidavit, which accompanied and purported to verify such statement, is as follows:

"STATE OF NEW YORK, } ss.
    CITY OF NEW YORK,

" Robert L. Case, president, and Isaac H. Allen, secretary, of the Security Life Insurance and Annuity Company, being duly sworn, depose and say, and each for himself says, that they are the above described officers of the said company, and that on the 31st day of December last all the above described assets were the absolute property of the said company, free and clear from any liens or claims thereon, *except as above stated;* and that the foregoing statement, with the schedules and explanations hereunto annexed and by them subscribed, are a full and correct exhibit of all the liabilities and of the income and disbursements, and of the general condition and affairs of the said company on the said 31st day of December last, and for the year ending on

that day, according to the best of their information, knowledge and. belief, respectively.

"ROBERT L. CASE,

"I. H. ALLEN, *Secretary.*

"Sworn and subscribed before me, this }
   19th day of Feb., A. D., 1876,  }

. "MOSES B. McCLAY,

"*Notary, etc.*"

It is insisted, on behalf of the plaintiff in error, that the indictment is insufficient to sustain a conviction upon the facts of this case, because it does not charge the items upon which the perjury is assigned to be false to have been within the information, knowledge, and belief of the defendant, and it is insisted that the whole affidavit is qualified by those words at its close. The soundness of this proposition depends upon the construction which should be given to such affidavit. Whether such qualifying words apply to the whole affidavit, or to the latter portion thereof, the punctuation indicates that the statements are made without qualification down to and including the words "except as above stated," at which point is inserted a semi-colon. Webster defines its office as follows : "It is used to distinguish the conjunct members of a sentence." While punctuation is an important element in the interpretation of written instruments, (Squires' Case, 12 Abb., 38.) yet it is not necessarily controlling, and should be rejected when other considerations which are paramount show that the intention of the parties to such instrument, is in conflict with the meaning which would be conveyed by such punctuation. An examination of the affidavit indicates that those subjects which could be regarded as likely to be within the personal knowledge of the affiant precede the semi-colon, viz : "That he was an officer of the company ; that on the 31st day of December, 1875, the assets were the absolute property of the company, free and clear from any liens or claims thereon, except as above stated. It cannot reasonably be inferred that these statements were intended to be made upon information, knowledge and belief. They were facts presumably within his personal knowledge, and therefore to be stated positively. It would seem absurd to hold

that he intended to state the fact that he was an officer upon information, knowledge and belief; and it seems an unreasonable inference that the president of such a company intended thus to qualify his statement that the assets of the company were its absolute property, free from liens and claims thereon, except as stated. The last expression, " except as stated," seems to support this view, as it conveys the idea that the statement was made after examination, and with deliberation and assurance. The subjects which are stated after the semi-colon differ widely from those which precede it. In this particular they are such as would be derived from an examination of the books, statements and accounts kept by employes, such, for instance, as the liabilities of the company, income and disbursements, general condition of the affairs of such company — these imply detail, information based upon statistics gathered in the progress of the business, and depending for their accuracy upon the fidelity of such employes. In regard to such matters, we might expect a qualified statement from the president of the company. We, therefore, conclude that the intention, fairly deducible from the entire affidavit and the subject to which it relates, harmonizes with the punctuation, and that the indictment properly charges the statements, upon which perjury is assigned to have been made, without qualification.

The statement was properly filed with the superintendent of the insurance department. The statute of 1859 (chapter 366), which creates such department, is very comprehensive in its terms. Section 3 provides: " The superintendent of the insurance department shall possess all the powers, perform all the duties, and be subjected to all the obligations and penalties now conferred by law upon the comptroller of this State, or to which the comptroller is subject, in relation to insurance companies, and the formation thereof under the laws relating thereto, so that every power and duty thereby conferred on the comptroller shall, from and after the appointment of such superintendent, be transferred to and conferred upon the said superintendent." Section 5 is as follows: " All books, papers, and documents, securities, stocks, bonds and mortgages, and all other papers whatever in the comptroller's office, and in the office of the secretary of State, relating to the business of insurance, shall, on demand, be delivered and

transferred to the superintendent of the insurance department, and be and remain in his charge and custody." We cannot doubt but that it was the intention of the legislature that all papers relating to the business of the insurance department should be filed in that office; and we think such intention is sufficiently declared to accomplish such result. · The statement in question was by the direction of the plaintiff in error there filed, which indicates his understanding of the law in that respect, and we do not think he was in error.

It is further insisted by the plaintiff in error that the indictment is fatally defective in omitting to state name, or time and place, and in not charging that the oath was administered in due form of law. We are of opinion that this objection is aimed at the form of the indictment, rather than the substance thereof; and not having been taken by demurrer or motion previous to judgment, all such defects are cured by the statute of jeofails. The Revised Statutes (volume 2, page 728), provides: " Section 52. No indictment shall be deemed invalid, nor shall the trial, judgment, or other proceeding thereon be affected " [omitting as inapplicable down to] " 4. By reason of any other defect or imperfection in matters of form which shall not tend to the prejudice of the defendant." We are unable to perceive wherein the plaintiff in error has been or could be prejudiced by such omissions in the indictment. We may fairly infer that had such defects been regarded of consequence, the remedy by motion or demurrer would have been resorted to. It is too late to assail the indictment upon such ground. (*Mason* v. *The People*, 26 N. Y., 200; *Fleming* v. *The People*, 27 id., 329; *The People* v. *Powers*, 6 id., 50; *Tuttle* v. *The People*, 36 id., 431; *Tomlinson* v. *The People*, 5 Parker, 313; *People* v. *Rynders*, 12 Wend., 425.) The decisions show clearly the disposition of the courts to give full force and effect to such statute. We apprehend there are few criminal trials where there may not be discovered, after the trial, some error · or omission touching the form of the proceedings, but which does not prejudice the case of the prisoner. This statute was intended to cure all such defects, and thereby avoid the necessity of granting new trials in every case where a harmless error or omission has intervened.

The statute of 1853 (chapter 463), which provides for the incorporation of life and health insurance companies, contains the following: " Section 12. It shall be the duty of the president, or vice-president and secretary or actuary, or a majority of the trustees of each company organized under the laws of this State, annually, on the first day of January, or within sixty days thereafter, to *prepare under oath*, and deposit in the office of the comptroller of the State, a statement showing " [enumerating eleven subjects, which we omit as inapplicable to this case]. " 12. amount of assets, and manner in which they are invested, specifying what amount in real estate, on bond and mortgage, stocks, loans on stocks, premium notes, credits, or other securities." We have endeavored to show that, as the result of legislation since 1853, the statement is required to be filed with the superintendent of the insurance department instead of the comptroller. Pursuant to the requirement of the statute, the plaintiff in error, in conjunction with the secretary of the company, made and filed a statement with the superintendent of the insurance department, which purported to have been sworn to by them on the 19th day of February, 1876, before Moses B. Maclay, a notary public of the city and county of New York. Such statement was designed to exhibit the financial condition of such company at the close of the fiscal year, December 31, 1875. Such statement contains the following:

" ASSETS AS PER LEDGER ACCOUNTS.

" 1. (*a*). *Cost* value of real estate, exclusive of all incumbrances, as per schedule A, - - - $460,875 00
" 6. (*c*) *Cost* value of bonds and stocks owned absolutely, as per schedule E, - - - - 592,197 75
" 7. Cash in company's office, - - - - - 32,818 11
" 8. Cash deposited in banks, - - - - - 172,890 57."

The indictment alleges the falsity of the four items above mentioned, and assigns perjury in relation thereto, and incorporates in such indictment the said items substantially as they appear in the statement filed in the insurance department. In our judgment, the only reasonable inference which can be drawn from the

facts is, that the plaintiff in error assumed the responsibility of presenting under oath the said statement in regard to such assets, as *he personally knew them to exist*, and not simply as the ledger of the company indicated. It is quite obvious that the law did not require a statement under oath that the ledger exhibited a correct and truthful statement of the assets of the company, but rather what the real fact was as to what property the company owned, and how the same was invested. Any other construction would enable the officers of such a company to evade the substantial requirement of the statute by resting such statement upon what the ledger revealed, which might possibly be manipulated for the purpose of exhibiting a particular and desired result. The purpose of filing such statement is to inform all parties interested of the financial condition of such company, and hence the necessity that it be accurate and truthful, else the object intended will be defeated, and parties interested mislead rather than instructed. We therefore conclude that the indictment properly and sufficiently alleged the offenses in this respect. (*Harris* v. *The People*, 64 N. Y., 148; *Wood* v. *People*, 59 id., 117; *Tully* v. *The People*, 67 id., 15.)

Upon the question whether the oath was actually administered by the notary public, McClay, there is a sharp conflict in the evidence. McClay testified upon his direct examination that he administered such oath, and that he recognized in court, both Case and Allen. Doubtless the force and reliability of his evidence was seriously shaken by the cross-examination. Yet he adhered to the statement that he actually administered the oath, although not able, with any degree of certainty, to fix the time or place from memory. His evidence was supported by the official certificate which was produced, and upon which he mainly relied. The law lends support to this evidence, by the presumption which it creates that a public officer does his duty. We perceive no motive which the notary could possibly have had to omit the oath, and to make a false certificate. Again, making a false certificate would subject him to punishment, and we can hardly suppose that he would have hazarded that result without some adequate motive, even if wicked enough to be guilty of such an act under any circumstances. It was the duty of Case

to make the oath, and hence the presumption is that he did it, which is consistent with the certificate of McClay. It is true, Case denies making such oath, and thereby falsifies the certificate which he caused to be placed on file; and declares that he omitted a duty which the law required of him. We do not lose sight of the consideration that the law raises a general presumption of innocence on the part of the prisoner, but we are endeavoring to weigh the presumptions as they affect this precise question. Other witnesses testified in regard to this question, and doubtless a strong case was made by the defense upon this issue for the consideration of the jury. It was peculiarly the province of the jury to determine this question, in the light of all the facts and circumstances. The witnesses were before them, they had an opportunity to observe their appearance, and the manner in which they gave their evidence, which enables the jury to draw proper inferences, and to attach to their evidence the weight to which it was entitled. The appellate tribunal is necessarily deprived of such opportunity, and hence the practical difficulty which attends the review of a question of fact where the evidence is seriously in conflict. It cannot be contended, with reason, that there is no evidence in support of the assumption on the part of the defendant in error that the oath was administered by McClay to the plaintiff in error. The determination of the jury upon this question must be regarded conclusive. (*Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y., 455; *Rounds* v. *D. L. & W. R. R. Co.*, 64 id., 129; *Morss* v. *Sherrill*, 63 Barb., 21.) In the last case this subject is very fully discussed. (*Cothran* v. *Collins*, 29 How., 155.)

Upon the question whether a new trial should be granted upon the ground of newly discovered evidence, we think the view taken by the Oyer and Terminer was clearly correct. The affidavits disclosed no new fact, but suggested additional witnesses in support of the facts proved upon the trial—strictly cumulative evidence, offered without a fair pretense of surprise or want of ability to produce such witnesses at the trial. (Wait's Practice, vol. 3, page 416, where this subject is discussed and the decisions are collected.) This case was submitted to the jury under a charge eminently fair and clear, and the law was enunciated correctly; so much so, that not an exception was taken, nor was there even

a request to add to, extract from, or modify the same. After a careful examination of this case, we conclude that the plaintiff in error has had a fair and impartial trial. While we are not insensible to the sad consequences which attend this conviction to a person so advanced in years, and who has been respected and honored by the community in which he resided, and in whose favor gentlemen of intelligence and probity testified at the trial in regard to his character, we cannot overlook another consideration, that the very qualities to which such prominence was given at the trial in favor of the accused, had inspired the community with a degree of confidence which led to his selection to discharge the trust which he has so grieviously violated, thereby sacrificing the rights of those who intrusted their property to his keeping. His own evidence upon the trial showed that he had been utterly inattentive to the business and concerns of the company, and his ignorance of its affairs was urged in support of his innocence. It is to be hoped that in the future those who assume the responsibilities of such positions will recognize the duty which they owe to those whose property is intrusted to their care, and execute such trusts with prudence, honesty and fidelity. This cause was carefully considered by the Oyer and Terminer, on a motion in arrest of judgment and for a new trial, as appears by the able opinion of Judge DAVIS, in which he very thoroughly discusses the questions which we have also considered. We conclude that the conviction must be affirmed.

DONOHUE and LAWRENCE, JJ., concurred.

Judgment affirmed.