ELISHA DEAN, Plaintiff in Error, *vs.* THE STATE OF DELAWARE, Defendant in error.

1. HOMICIDE—COMMON-LAW RULE, REQUIRING ALLEGATION IN PROSECUTION FOR HOMICIDE AS TO MANNER OF DEATH AND MEANS BY WHICH EFFECTED, STILL APPLIES.

Common-law rule that, in prosecutions for homicide, it is necessary to allege with as much certainty as circumstances will permit manner of death and means by which it was effected, is still applicable; there being no statute on the subject.

2. HOMICIDE—ALLEGATION AND PROOF IN PROSECUTION FOR MANSLAUGHTER BY AUTOMOBILE DRIVER HELD NOT TO PRESENT FATAL VARIANCE.

In a prosecution for manslaughter by automobile driver, allegation that deceased was thrown against certain parts of his automobile, receiving injuries from which he subsequently died, did not present a fatal variance with proof that deceased was killed by being thrown on the ground.

3. INDICTMENT AND INFORMATION—VARIANCES REGARDED AS MATERIAL BECAUSE THEY MISLEAD PRISONER IN MAKING DEFENSE.

Variances are regarded as material, because they may mislead a prisoner in making his defense, and because they may expose him to danger of double jeopardy.

4. HOMICIDE—TEST WHETHER VARIANCE EXISTS BETWEEN PROOF AND. ALLEGATION IN INDICTMENT STATED.

Whether a variation exists between proof and allegations as to manner and means of death depends entirely upon whether instrument used to cause death and manner thereof are substantially of the same nature and character as alleged in indictment.

5. CRIMINAL LAW—APPELLATE COURT CANNOT CONSIDER ASSIGNMENTS OF ERROR, WHERE NO EXCEPTION SAVED TO TRIAL COURT'S RULING.

Where no exception was noted by defendant on court's refusal to exclude testimony, an assignment of error based thereon could not be considered by appellate court.

(*January* 15, 1924.)

*Wolcott,* Chancellor, *Rice* and *Harrington, J. J.,* sitting.

*Robert G. Harman* for Plantiff in Error.

*Clarence A. Southerland,* Deputy Attorney-General, (Sylvester D. Townsend, Jr., Attorney-General, with him on brief) for the State of Delaware.

Supreme Court, No. 1, January Term, 1924.

Elisha Dean, the plaintiff in error, was convicted of manslaughter and sentenced on that charge in the Court of Oyer and Terminer, in and for New Castle County, on the third day of October, 1923; case heard in this court on a writ of error to review the proceedings in the court below.

The testimony on behalf of the State was to the effect that on the night of May 19th, 1923, at about 11:30 p. m., James E. Lockerman was driving in a northerly direction in his Ford touring car, at a rate of speed not exceeding from five to nine miles an hour, along the right side of the old macadam road leading from Smyrna to the new concrete State highway, at a point in Blackbird Hundred a short distance below Armstrong's Corner; that a short distance north of this point the old macadam road leading northward from Smyrna joins the new State highway at an angle of about thirty degrees; that said highway was not completed beyond its juncture with the old Smyrna road, but its roadbed, roughly graded, continued in a southerly direction in the line of said State highway; that when Lockerman's automobile had reached a point from 150 to 180 feet below the juncture of the two roads a seven passenger Willys-Knight automobile, driven by Dean, the plaintiff in error, was proceeding southward on the said State highway; that said automobile was being driven at a high rate of speed, having passed a danger signal approximately 100 feet north of the point where the roads above referred to intersect, without slacking speed; that when said Willys-Knight automobile reached the end of that part of the said State highway, on which concrete had been laid, instead of being turned by the driver to the right, into the old Smyrna road, it proceeded a short distance along the rough road-bed, continuing from the State highway, above referred to, and was then

turned to the right in an effort to get on the 'said Smyrna road; that in doing this said automobile was driven into the Ford automobile driven by Lockerman, the deceased, striking it on the right side, near the front of the car; that Lockerman was sitting on the left side of the front seat of the Ford automobile; that his wife was sitting on the back seat; that the force of the collision between the two automobiles was so great that the Ford automobile, in which Lockerman was riding, was pushed across the road from 40 to 45 feet into a ditch, and nearly demolished; that the head lights on Lockerman's car were lighted at the time; that the wife of Lockerman was stunned by the collision between the two cars; that when she regained consciousness she was still in the car but her husband was lying in the road; that witnesses on the scene, within five to ten minutes after the accident, testified that when they reached the spot Mrs. Lockerman was standing by the fender of the Ford car and that Lockerman was sitting on the running board; that Lockerman sustained a fracture of the skull at the base of the brain from the collision above referred to and was taken to a Philadelphia hospital, where he died the next day.

The indictment contained five counts. Each count alleged that on the day and time in question Dean, the plaintiff in error, was operating a motor vehicle, setting out the manner of operation, and that while so engaged he "did run into and collide with a certain other motor vehicle, wherein a certain James E. Lockerman was then and there riding," etc., and that "the said James E. Lockerman, on the day aforesaid, in the Hundred aforesaid, by reason of the premises, was then and there thrown to and against certain parts of the said motor vehicle in which he, the said James E. Lockerman, was then and there riding, and then and there and thereby did receive in and upon his head and other parts of his body divers mortal wounds, cuts, etc., of which said divers mortal wounds, cuts, etc., the said James E. Lockerman" did subsequently die.

The plaintiff in error filed, among others, the following assignments of error to the proceedings in the lower court:

1st.   The court erred in not granting the motion of the defendant below to take the case from the jury upon the ground that the State had failed to prove the case as set out in the indictment; viz.: that the deceased came to his death from injuries received by being thrown against parts of his automobile.

2nd.   The court erred in not striking out the testimony of Dr. Cobb, when he testified, as to the time and nature of the decedent's death, from the hospital records.

HARRINGTON, J., delivering the opinion of the court:

[1]   In a prosecution for homicide at common law while each case necessarily depended upon its own particular facts, it was generally necessary to allege, with as much certainty as the circumstances of the case would permit, the manner of death and the means or instrument by which it was effected.   *Russell on Crimes, vol.* 1, *p.* 557; *Wharton on Homicide,* §§ 563, 565; *Ency. of Pl. & Pr. vol.* 10, *p* 126; 31 *Cyc.* 841.

While the strictness of the old rule has been somewhat modified by statute in England, as well as in some of the States in this country (*Wharton on Homicide,* § 563; *Ency. of Pl. & Pr. vol.* 10, *pp.* 126, 131) there is no statute in this State; therefore, the common law rule still applies.

*State v. Townsend, Houst. Cr. Cas.* 337, and *State v. Taylor, Houst. Cr. Cas.* 436, are examples of the application of this rule.

[2-4]   Under the facts of this particular case, however, it is unnecessary for us to consider what degree of particularity, in alleging the manner of death, was necessary to comply with the above rule, though the following references are instructive on the general question: *Russell on Crimes, vol.* 1, *pp.* 561, 562; *Wharton on Homicide,* § 566; *Bishop's Crim. Procedure, vol.* 1, § 502; *Id. vol.* 2, § 515; *State v. Jenkins et al.,* 14 *Rich.* (*S. C.*) 215, 94 *Am. Dec.* 132; *Chitty on Crim. Law, vol.* 3, p. 520; *State v. Bell,* 5 *Penn.* 192, 62 *Atl.* 147. See, also, *State v. Kreuger,* 1 *W. W. Harr.* (31 *Del.*) 118, 111 *Atl.* 911.

The indictment in this case, in substance, alleges that by reason of the collision of the automobile driven by Dean, the

plaintiff in error, with the automobile driven by Lockerman, the said Lockerman was thrown to and against certain parts of the motor vehicle in which he was then and there riding, receiving injuries from which he subsequently died.

It is not denied that there was a collision between the automobile driven by the plaintiff in error, Dean, and that driven by Lockerman, as is alleged in the indictment, but it is contended that assuming that Lockerman died from the injuries received in such collision that his injuries were caused not by his being thrown by the force of such collision against certain parts of the automobile in which he was then riding, but by being thrown out of it on the ground, or on the macadam road, and that there is, therefore, a fatal variance between the allegations in the indictment and in the proof.

The proof as to the specific manner in which Lockerman's injuries were received is purely circumstantial.

The plaintiff in error contends, however, that every reasonable inference supports the conclusion that his injuries were not received in the manner alleged in the indictment.

. If for the sake of argument this contention be admitted, it does not necessarily settle the question in favor of the plaintiff in error.

Variances are regarded as material because they may mislead a prisoner in making his defense and, also, because they may expose him to the danger of again being put in jeopardy for the same offense. *Drummer v. State*, 45 *Fla.* 17, 33 *South.* 1008; *Harris v. People*, 64 *N. Y.* 148; *Com. v. Fox*, 7 *Gray (Mass.)* 585; *Wharton on Cr. Ev. vol.* 1, § 90.

While there are many cases of allegations, descriptive and otherwise, where a variance in the proof is fatal (*Bishop's Cr. Proc. vol.* 1, §§ 488 to 488C; *State, etc., v. Reading*, 1 *Harr.* 23; *State v. Jester*, 2 *Harr.* 531; *State v. Gray*, 2 *Harr.* 531; *Greenleaf on Ev. vol.* 1, §§ 63 to 65, inclusive) it is not necessary for us to consider the general subject of variances and what allegations must be proved precisely as alleged, as it is well settled that in an indictment for homicide—

"the substance of the charge is that the prisoner feloniously killed the deceased by means of shooting, poisoning, cutting, blows or bruises, or the like; it is, therefore, sufficient if the proof agree with the allegation in its substance and general character, without precise conformity in every particular." *Greenleaf on Evidence, vol.* 1, § 65, *p.* 104.

See, also, *Russell on Crimes, vol.* 2, p. 792; *Bishop on Crim. Proc. vol.* 1, § 488C; *Id. vol.* 2, §§ 514, 515, and 517.

It is, also, well settled that if an indictment allege that one of several defendants committed the act charged, and that one or more other persons were engaged with such principal offender in the commission of the same crime, as accomplices, and the proof shows that one of the alleged accomplices, and not the person alleged to have been the principal offender, committed the fatal act; the legal effect of the proof corresponds with the allegations in the indictment so the identity of the person supposed to have committed the fatal act is an immaterial circumstance, and there is no material variance. *Russell on Crimes, vol.* 2, § 793; *Wharton on Homicide,* § 563; *State v. Jenkins et al.,* 14 *Rich.* (*S. C.*) 215, 94 *Am. Dec.* 132; *Rex v. Culkins,* 5 *Car. & P.* 121; *State v. O'Neal, Houst. Cr. Cas.* 58.

Therefore, in homicide cases, the test as to whether there is a variance between the proof and the allegations in the indictment, as to the manner and means of death, depends entirely upon whether the instrument used to cause death, and the manner of death, are substantially of the same nature and character as alleged in the indictment. *Wharton on Homicide,* § 567; *Greenleaf* on *Evidence, vol.* 1, § 65, p. *104 (supra); Ency. of Pl. & Pr. vol.* 10, pp. 128, 131; *Russell on Crimes, vol.* 1, *pp.* 557, 558; *Id. vol.* 2, *pp.* 792, 793; *Michie on Homicide, vol.* 2, § 142, *p.* 559; *Underhill on Criminal Evidence,* §314; *State v. Dame,* 11 *N. H.* 271, 35 *Am. Dec.* 495; *Gipe v. State,* 165 *Ind.* 433, 75 *N. E.* 881, 1 *L. R. A.* (*N. S.*) 419, 112 *Am. St. Rep.* 238; *Sharwins' Case,* 1 *East. P. C.* 341; *Rex. v. Grounsell,* 7 *Car. & P.* 788 (32 *E. C. L.* 737); *State v. Taylor, Houst. Cr. Cas.* 437.

In *Russell on Crimes, vol.* 1, *p.* 557 (*supra*), the author says:

"The indictment should in all respects be adapted as closely to the truth as possible. It is essentially necessary to set forth particularly the manner of the death and the means by which it was effected, and this statement may,

according to the circumstances of the case, be one of considerable length and particularity. But it will be sufficient if the manner of the death and the proof agree in substance with that which is charged. Therefore, if it appear that the party were killed by a different weapon from that described, it will maintain the indictment, as if a wound or bruise alleged to have been given with a sword be proved to have been given with a staff or axe, or a wound or bruise alleged to have been given with a wooden staff, be proved to have been given with a stone. So if the death be laid to have been by one sort of poisoning, and it turn out to have been by another, the difference will not be material. So if an indictment allege that a woman 'with both her hands about the neck' of a child, did press and squeeze, and thereby suffocated and strangled the child, it is sufficient to prove that the child came by its death by strangulation or suffocation, and it is not necessary that the prisoner should have done it with her own hands, for if it was done by any other person in her presence, she being privy to it, and so near as to be able to assist, that is sufficient. So where a count charged the death to be by suffocation, by the prisoner having placed her hand on the mouth of the deceased, and the evidence was that the deceased had died from suffocation, and pressure; it was held that, if any violent means were used to stop respiration, and the death was thereby caused, the count was proved. But if a person be indicted for one species of killing, as by poisoning, he cannot be convicted by evidence of a species of death entirely different, as by shooting, starving, or strangling."

*Michie on Homicide, vol.* 2, § 142, *p.* 599, *supra,* is equally clear in expressing the rule.

*State v. Dame,* 11 *N. H.* 271, 35 *Am. Dec.* 495, and *Gipe v. State,* 165 *Ind.* 433, 75 *N. E.* 881, 1 *L. R. A.* (*N. S.*) 419, 112 *Am. St. Rep.* 238, also review many of the early English cases. After analyzing these cases, the opinion in *State v. Dame* concludes with the following statement:

"It appears, therefore, very clear from the authorities, that if the manner of the death, or injury proved, agree in substance with that charge, the allegation is maintained. The indictment should in all respects be adapted as closely to the truth as possible; but the particular manner in which the injury was caused is immaterial, provided there be a substantial agreement between the evidence and the allegations in the indictment."

Lockerman's injuries were primarily caused by the negligent act of Dean in driving into the automobile in which he was riding. Whether such injuries were caused by reason of his being thrown by the force of the collision against parts of his own car, or on the ground or macadam road, the general character of the injuries received by him, as well as the manner of inflicting them, were of substantially the same nature.

The substance of the issue was, therefore, proved (*Greenleaf on Ev. vol.* 1, § 56) and any difference between the allegations and

the proof could have caused no surprise, or other hardship, to the plaintiff in error. That being true, there is no fatal variance between the proof and the allegations in the indictment. Dean, the plaintiff in error, relies on the following cases: *Roscoe's Crim. Ev.* 707; *Kelly's Case*, 1 *Moody C. C.* 113; *Thompson's Case*, 1 *Moody C. C.* 139; *State v. Woods*, 7 *Penn.* 499, 77 *Atl.* 490; *McCoy v. P. W. & B. R. R.*, 5 *Houst.* 599; *Higgins v. Wilmington*, 3 *Penn.* 356, 51 *Atl.* 1; *McAllister v. People's Ry. Co.*, 4 *Penn.* 272, 277, 54 *Atl.* 743.

With the possible exception of *McCoy v. P. W. & B. R. R. Co.*, 5 *Houst.* 599, none of these cases bear out his contention.

As we have already stated both *State v. Townsend*, *Houst. Cr. Cas.* 337, and *State v. Taylor*, *Houst. Cr. Cas.* 436, *supra*, were merely applications of the well recognized common law rule, heretofore stated. This clearly appears from the opinion of the court in *State v. Townsend.*

In that case the indictment in substance alleged that the deceased was hit on the left side of his head with a brick-bat, held in the hand of the defendant, and his skull fractured, from the effects of which he subsequently died. The proof was that he was probably struck by the defendant with his fist and killed by falling against a stone, or some other hard substance.

The court said if the skull of the deceased was fractured "not by a *blow of some kind* inflicted by the prisoner, but by his falling after he was struck by him with his head against a stone or some other hard substance in the street then the prisoner could not be convicted under the indictment; because it does not so allege the killing but in a *wholly different* and *in a much more direct manner.* Or if the fatal blow was given *in any other method or in any other way substantially and essentially different from these alleged in the indictment*," he should be acquitted.

The charge of the court in this case is clearly based on *Kelly's Case*, 1 *Moody C. C.* 113, and *Thompson's Case*, 1 *Moody C. C.* 139. The same principle was, also, involved in *Rex v. Martin*, 5 *C. & P. 128* (24 *E. C. L.* 238).

In both Kelly's Case and the Thompson Case, however, it appears that the court called attention to the fact that there was no allegation in the indictment that the deceased was thrown to the ground and the conclusion is irresistible that the result would have been different if such an allegation had appeared.

In this case there was an allegation that the deceased was thrown against the parts of his automobile. It is true that there is no allegation that he was thrown to the ground, but as we have already stated the character of the injury would have been the same whether he was thrown against the parts of his automobile or against the ground.

That being true, the present case is clearly distinguishable from *State v. Townsend, supra,* and the English cases on which it was based.

*State v. Taylor, supra,* needs no particular comment. The indictment, in substance, alleged that the defendant pushed and threw one Mackey into a certain creek, and that he was then and thereby suffocated and drowned.

The real question was whether he was drowned by falling into the creek, while intoxicated, or whether he was pushed into the creek by the defendant and drowned in that manner.

The gist of the case appears in the syllabus, which is as follows:

"The *onus* of proof is on the State to establish the *corpus delicti* or the killing by the means *substantially* as alleged in the indictment, and that the deceased came to his death by drowning, and by being thrown into the creek by the accused."

*State v. Woods,* 7 *Penn.* 499, 77 *Atl.* 490, merely approved *State v. Townsend* and *State v. Taylor, supra,* and certainly did not intend by the general language used to lay down any rule not supported by the common law.

*Higgins v. Wilmington,* 3 *Penn.* 356, 51 *Atl.* 1, and *McAllister v. People's Ry.,* 4 *Penn.* 272, 54 *Atl.* 743, were cases where allegations in the declaration that the plaintiff was thrown from a trolley car, or other vehicle, were not supported by proof that they had jumped to avoid an impending collision.

Neither of these cases are inconsistent with our conclusion in this case.

*McCoy v. P. W. & B. R. R.*, 5 *Houst.* 599, was an action for negligence against the railroad company. The declaration, in substance, alleged that the plaintiff's horse was frightened by the train of the defendant and that he was thrown out of his carriage, on the ground, and thereby injured, etc. The proof was that he was merely thrown from the seat of his carriage against the dashboard.

The Superior Court held that there was a variance between the proof and the allegations in the declaration. It may be that that case is inconsistent with our conclusion in this case.

The principles applicable to variance between the pleadings and proof in both civil and criminal cases are substantially the same. *Greenleaf on Ev. vol.* 1, § 65. For a negligence case in this state, in effect holding that it was sufficient to prove the substance of the issue, see *Mills v. Wil. City Ry. Co.*, 1 *Marv.* 269, 40 *Atl.* 1114.

No cases are cited by the court in support of its conclusion in the McCoy Case and considering the cases above cited announcing the common law rule as to variances in homicide cases, we are unable to follow it in this case.

[5] The second assignment of error relates to the refusal of the trial court to strike out the testimony of Dr. Cobb, when he testified as to the time and nature of the decedent's death, from the hospital records.

It appears from the record that Dr. Cobb's testimony was not confined to information gathered by him from the hospital records. It shows that he examined Lockerman shortly after the accident, and on ascertaining that he was suffering from a fracture of the skull at the base of the brain, took him to the Philadelphia hospital, where he subsequently died. It also showed that he saw him after his death. It further appears from the record that while there was a motion to strike out the whole of the testimony of Dr. Cobb, and that though such motion was refused by the court, no exception was noted on behalf of the defendant below, the plaintiff in error in this court.

That being true, this assignment cannot be considered by us. *Garboctowski v. State*, 2 *W. W. Harr.* (*32 Del.*) 386, 123 *Atl.* 395.

For the reasons above given the judgment of the court below is affirmed.