## CLODFELDER v. STATE OF INDIANA.

[No. 25,033. Filed May 20, 1926. Rehearing denied October 8, 1926.]

1. CRIMINAL LAW.—*Verdict of acquittal for robbery and conviction of larceny joined in one count legal.*—Section 2212 Burns 1926 authorizes the joinder of a count charging robbery with a count charging larceny of the same goods, and a verdict acquitting the defendant on one charge and convicting him on the other is not contrary to law. p. 279.

2. CRIMINAL LAW.—*In determining the sufficiency of the evidence, an appellate court considers only evidence supporting verdict.*—In determining whether the evidence was sufficient to sustain a conviction, the Supreme Court considers only the evidence supporting the verdict, and accepts as true all evidence which tends to establish the guilt of the accused, and determines only whether that, standing alone, is sufficient to sustain the inference of guilt drawn by the jury. p. 279.

3. LARCENY.—*Evidence held sufficient to sustain conviction for larceny.*—Evidence *held* sufficient to sustain the conviction of the maker of a series of notes of larceny, where the notes were taken from the payee by a supposed highwayman, while she was riding with the defendant on a lonely byroad which he had taken instead of the direct road to his destination, and the notes were later found in defendant's office marked "paid." p. 279.

4. CRIMINAL LAW.—*Decision of trial court as to misconduct of jurors, on conflicting affidavits, conclusive.*—The decision of the trial court as to whether a juror was guilty of misconduct in making certain statements prior to the trial as to the guilt of the accused is conclusive on appeal when there were conflicting affidavits as to such misconduct. p. 282.

5. CRIMINAL LAW.—*Acceptance of disqualified juror on examination precludes objections after conviction.*—A defendant who has accepted a juror after he had stated on his preliminary

examination that he had formed an opinion that it would take evidence to remove will not be allowed to claim that the juror was disqualified by reason of said opinion, after return of verdict of guilty.   p. 282.

From Knox Circuit Court; *Thomas B. Coulter,* Judge.

Roy Clodfelder was convicted of grand larceny, and he appeals.  *Affirmed.*

*Arnold J. Padgett, Arthur A. Clark* and *William L. Slinkard,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *George J. Muller,* Deputy Attorney-General, for the State.

EWBANK, C. J.—The first count of the indictment on which appellant was tried alleged that forcibly and by violence and putting her in fear, at Knox county, Indiana, he had feloniously robbed, taken and stolen from the person of Jessie Bond $5 in money, a purse of the value of $10, a bank check of the value of $17.50, two pairs of spectacles of the value of $9 each, and eight notes of the value of $1,000 each, all of which were her property.   The second count alleged that he feloniously took, stole and carried away of the personal goods and chattels of Jessie Bond the same articles of the same alleged value.   The jury returned a verdict as follows: "We, the jury, find the defendant not guilty as charged in the first count of the indictment, but guilty of grand larceny as charged in the second count of the indictment, and that his age is 35 years."   The defendant filed a motion for a new trial for the alleged reasons that the verdict is contrary to law, and that it is not sustained by sufficient evidence, and that one of the jurors was guilty of misconduct in that he had expressed an opinion the evening before the commencement of the trial that defendant was guilty and ought to be in the "pen" for life.   Overruling that motion is the only error assigned.

The statute provides that "an indictment or affidavit for larceny may contain a count * * * for obtaining the same goods by robbery * * *

1. and the accused may be convicted of either offense." §2212 Burns 1914, §185, ch. 169, Acts 1905 p. 584 (624). And the mere fact that defendant was found not guilty of the charge of robbery contained in one count did not make a verdict contrary to law which found him guilty of larceny, as charged in the other count.

In determining whether or not a verdict of guilty is sustained by sufficient evidence the Supreme Court does not weigh the evidence nor undertake to decide

2. any disputed questions of fact. But it accepts as true all evidence which tends to prove what was found by the verdict, and refuses to consider any which tends to prove the contrary, and then determines whether or not that which tends to prove the facts found by the verdict, standing alone and undisputed, sustains the inference of defendant's guilt drawn by the jury. *Small* v. *State* (1921), 190 Ind. 406, 408, 130 N. E. 401; *Tutsbree* v. *State* (1924), 195 Ind. 581, 583, 145 N. E. 490; *Wolfa* v. *State* (1926), 197 Ind. 204, 150 N. E. 98.

There was evidence that, in the spring of 1921, Mrs. Jessie Bond sold defendant an elevator in Oaktown, about twelve miles north of Vincennes, for

3. $13,500, and that he paid her $3,500 in cash and gave her ten notes for $1,000 each, dated April 29, 1921, which were signed by himself and Bernard Hancock, his brother-in-law. That defendant then moved to Oaktown, where he lived thereafter. That defendant paid two of the notes but failed to pay the third when it became due. That he paid the interest on all of them to August 1, 1924. That about the middle of September, 1924, Mrs. Bond was at her sister's

in Bruceville, northeast of Vincennes on the state road, and about eight or nine miles southeast of Oaktown, when she telephoned defendant at Oaktown asking him to pay the overdue note, which he had repeatedly promised to do. That after he had failed several times to keep appointments with her, they met by pre-arrangement in Vincennes, when he promised to see his father at Freedom, seventy miles northeast of Vincennes, and arrange to take up all the notes. That the next Monday afternoon, he came to Bruceville and said that he had arranged with his father to pay off the notes, and if Mrs. Bond would go to Vincennes and get them, they would take them to Freedom that afternoon, he saying that his father had the money in the bank where it was not drawing any interest. That, at Vincennes, he stopped the car some distance from the bank, and walked about in a nervous manner, back and forth and across the street while Mrs. Bond went to the bank and took the notes from her safe deposit box, and, while waiting, he tied a blue handkerchief to the handle in front by which the car was cranked. That the notes were put in a large envelope and Mrs. Bond returned to the car with them, where defendant asked if she had the notes, and, on being told that she had, drove to Bruceville over the state highway where they arrived about 3 o'clock in the afternoon. That they drove northeast about a mile and a half beyond Bruceville, where the state highway turned to the right, when defendant turned to the left on a side road, saying that he had forgotten the mortgage he was to take to his father, and that they would drive northwest to Oaktown and get the mortgage and then drive east to the state road. That after driving on that road a short distance, defendant turned north on what Mrs. Bond told him was the wrong road, but he said they "would see when they got there." That they went along that

road "until they came to the new bridge over Maria creek," and just as they got across the bridge, a masked man, fifteen or twenty feet ahead of them, ran toward them on the left side of the road, crossed in front of them and ran up to Mrs. Bond on the right hand side of the car, exclaiming "We want your money." That she had the envelope with the notes in her lap with her purse, and her coat over it, and he took the purse and envelope from her lap. That she did not notice any weapons, but defendant stopped the car very suddenly while the man was some distance away in front of them. That a man on the other side also put his hand into defendant's pocket while he sat in the car, and defendant told Mrs. Bond the man had taken $50 of his money. That the purse and envelope taken from Mrs. Bond contained the articles described in the indictment, which were of the value there stated. That the blue handkerchief which defendant had tied to the handle by which he cranked the car was still on the car when it was stopped at the bridge, and had been noticed by persons who saw defendant and Mrs. Bond driving along the road. That, in stopping the car, defendant killed the engine, and after the men had taken the things from Mrs. Bond and had ordered them to drive on, defendant got out and cranked the car and they drove to Oaktown. That the road at the point where the car was stopped was a dirt road, not very wide, and appeared to be unfrequented, and the weeds were very high at that place. That at Oaktown, they called the town marshal and drove with him to the bridge where Mrs. Bond had been robbed. That the town marshal had then been in the employ of defendant as foreman of the elevator for nearly three years, after having worked there five years for another man. That when they got out of the car at the bridge and were probably thirty feet from Mrs. Bond, the marshal said

to defendant "Roy, was this a frame up?" And, receiving no answer, repeated the question, when defendant replied "Yes, keep quiet." That defendant's office in Oaktown was searched by authority of a warrant a few days later and ten notes, dated April 29, 1921, payable to Jessie G. Bond and signed by defendant and his brother-in-law, Bernard Hancock, were found there, with the word "paid" written in red pencil on each of them by somebody other than Mrs. Bond, and Mrs. Bond identified eight of them as the notes which she took from the bank and was carrying in her lap at the time she was robbed. And many attending circumstances were proved which might bear a sinister interpretation, including the fact that defendant paid nothing on the overdue stolen note, and did nothing toward providing Mrs. Bond with any evidence of his continued indebtedness to her on any of the missing notes. The evidence was sufficient to sustain the verdict.

The motion for a new trial for alleged misconduct of a juror was supported by the affidavits of two men that in a pool room at Bicknell on the night before the trial commenced, they heard the juror say "that he had just been subpoenaed in the Clodfelder case and was going to the trial, and that Clodfelder was guilty and ought to be in the pen for life; that there was no question but what he would be stuck; that he knew if all the jurors were from Bicknell he sure would get life. He said that the Bicknell Daily News had everything on Clodfelder, and that everybody knew he was guilty." But the juror filed a counter-affidavit stating that he was not in a pool room at Bicknell on that night, after he was subpoenaed as a juror, and had no conversation with and made no statements in the presence of said affiants or any other persons about Clodfelder or the Clodfelder

case, and did not use the words attributed to him as above set out; and that he did not know at the time in question that the case of the State of Indiana v. Roy Clodfelder was for trial, and never previous to the trial talked to anyone about the case, or expressed any opinion as to the guilt or innocence of defendant before he was sworn as a juror in said cause except to answer the questions of counsel in the presence of the court as to his qualifications to serve as such juror. This denial of the facts alleged in support of the motion for a new trial was supported by the affidavits of the wife of the juror and of the deputy sheriff who subpoenaed him. And the prosecuting attorney also filed an affidavit in opposition to said motion setting out the examination of the juror on the *voir dire* in which he stated in answer to questions by the prosecuting attorney that he had a prejudice against enforcing the statute imposing a penalty of from ten to twenty-one years for robbery, and that he didn't know whether he could try the case fairly and impartially according to the law and evidence or not; and, in answer to questions by the attorney representing defendant, that he had formed an opinion which it would require evidence to remove from his mind. And it was further shown that after he had answered the questions in this way, he was not challenged by defendant, but was accepted as a juror, although defendant did not exhaust his peremptory challenges, and had the right to challenge several more jurors peremptorily at the time the jury was sworn. The conflicting affidavits as to whether or not the accused juror had made the statements attributed to him presented an issue of fact as to which the decision of the trial court is conclusive. The Supreme Court does not weigh conflicting evidence. And the juror having been voluntarily accepted by defendant after stating on his preliminary examination that he

*0*

had formed an opinion, defendant will not be heard to complain after the return of the verdict that he was disqualified on that account.

The judgment is affirmed.

Willoughby, J., not participating.