## ANDERSON v. STATE OF INDIANA.

[No. 26,012. Filed June 29, 1933. Rehearing denied November 22, 1933.].

608

C. W. Napier, William L. Chambers, and Tremain & Turner, for appellant.

James M. Ogden and Philip Lutz, Jr., Attorneys-General, and James T. Dowling and William E. Bussell, Deputies Attorney-General, for the State.

HUGHES, J.—The appellant was indicted by the grand jury of Dearborn County, Indiana, for the murder in the first degree, of Herman Lange. On a change of venue the cause was sent to the Franklin Circuit Court where the appellant was tried by a jury, convicted, and his punishment fixed at death.

The appellant presents two specifications in his assignment of error: (1) That the court erred in overruling the motion of appellant to quash the affidavit; (2) that the court erred in overruling appellant's motion for a new trial.

Several reasons are assigned in the motion for a new trial. Two of the more substantial ones are, (1st) that the court erred in permitting the state to read to the jury an alleged dying statement of the decedent Herman Lange, and, (2nd) the court erred in permitting the state to read to the jury an alleged confession of the defendant. The alleged dying statement is as follows:

"Cincinnati, Ohio, December 31, 1929. I, Herman Lange, being now fully convinced that I am going to die from injury I sustained on the morning of December 30, 1929, when I was shot and with the

full realization of impending death certain, from my present injuries, do hereby voluntarily make the following statement as to the facts as to how I was shot. The man who did the shooting was James Anderson. He told me that was his name. He wore high top, laced shoes, blue corduroy pants, black overcoat, and black hat. I went to Brookville and met the sheriff of Franklin County and on the road back I saw Anderson and I went back and asked him if he wanted to ride. I stopped and I got out of the car and the wind must have blown my coat back and when he saw my badge, he shot me.

Signed, Herman Lange.
Witnesses,
Ora M. Slater, Howard L. Shearer."

At the time Herman Lange received his fatal injury he was sheriff of Dearborn county and was in pursuit of the appellant who had shot one Benjamin Shaw, on the night of December 29, 1929, and on the same night shot Lange. Lange was taken to the Bethesda Hospital in Cincinnati, and operated on, and died on December 31. In addition to the above signed statement of Herman Lange, one Emma Maines testified as a witness. She testified that she heard some shooting near her home; that she heard Mr. Lange hollow, but did not know who it was at the time; that he was saying, "Oh help me"; "Oh, my God help me"; that he came to the door of her home; that he told her and her husband who he was, and that he had been shot; that he came up to the house and said, "My God help me, I am shot"; that he came in the house; that two of his fingers were shot; that she put him in bed and he said, "it was killing him, his side was killing him"; that she wiped the perspiration from his head; that he told me that, "that was going to kill him, that he wouldn't get over it; that at that time he tossed to and fro on the bed and suffered intense pain; that he said he passed a man on the road, and he recognized him, and went

back to get him, and he said he stopped his machine and asked him if he wanted a lift, and the man said he didn't mind, and that he got out of his machine, and he asked the man his name, and he told him his name was Anderson, and then that he shot him." The evidence of Mrs. Maines further shows that she saw considerable blood around the automobile, and on the concrete road. Mr. Lange remained in her home about one hour before the coroner and a doctor came and then he was taken to the hospital.

Dr. Sherman, a surgeon of Cincinnati, testified that Lange was brought to the Bethesda Hospital on December 30th about 8:40 A. M.; that he was suffering from a revolver wound in the abdomen; that he was conscious when brought in and continued so up until the time of his death with periods of unconsciousness; that the bullet had entered the abdomen about two and one-half inches above the umbilicus; that it passed through the abdominal wall and through the peritoneum and buried itself in the muscles of the back. Lange died on December 31, 1929, at 10:50 P. M. The bullet taken from the body was number 38.

The statement signed by Lange and heretofore set out was signed about 4:00 P. M. December 31, 1929, or about six hours before he died.

Ora M. Slater, witness for the state, stated that he and others were at the hospital about 4:00 P. M., December 31, 1929; that he saw Lange and that Lange said he realized that he was going to die, that Julius Schwing, Howard L. Shearer, and Judge Lowe were present; that after they had talked to him, a typewritten statement was made and Lange signed the same. These witnesses testified that the statement was read over to Lange, and he said it was a true statement, and he then signed it. The signed statement is much like the evidence given by Emma Maines.

The evidence of Lillian Pierce and Elsie Flickner as to the dying declaration was somewhat in conflict with the evidence of the other witnesses. However, Miss Flickner stated that she went on the case about 7:00 P. M., December 31, and she was there when Lange was pronounced dead at 10:50 P. M.; that she thought he realized at the last that he was going to die. The evidence of the witnesses testifying to the dying declaration was heard and passed upon by the lower court; in some particulars it was in conflict, but not of such a nature that this court will disturb the same.

Considering the foregoing statement of facts as set out, was the signed statement of Lange and the evidence of Emma Maines admissible?

In the case of *Williams* v. *State* (1906), 168 Ind. 87, 79 N. E. 1079, the court said: "If the court is convinced, from the testimony of the witnesses, that the deceased, when he uttered the proffered declaration, was in expectancy of impending dissolution, he should permit the declaration to go to the jury, to be by them considered as other evidence under proper instructions of the court. An appellate tribunal is not in a situation to weigh the preliminary evidence as intelligently as the trial judge who had the witnesses before him, and will, therefore, not reverse the action of the lower court in admitting such evidence unless the error is manifest."

In the case of *Gipe* v. *State* (1905), 165 Ind. 433, 75 N. E. 881, the court cites and approves the statement set out in the John's case 1 East, Pleas of the Crown 357, 358, as follows: "If a dying person either declare that he knows his danger, or it is reasonable to be inferred from the wound or state of illness that he was sensible of his danger, the declarations are good evidence." And the court in the Gipe case, *supra,*

further said: "That the character of the wound may of itself warrant the inference that the declarant was under a sense of certain and speedy death is settled upon the authorities. . . . Its conclusion that the declarations were admissible is one which will not be disturbed on appeal unless it is manifest that the facts did not warrant the conclusion." Citing many cases.

Prof. Wigmore in discussing the foregoing propositions says: "In ascertaining this consciousness of approaching death, recourse should naturally be had to all the attending circumstances. It has been contended that only the statements of the declarant could be considered for this purpose; or, less broadly, that the nature of the injury alone could not be sufficient, i. e., in effect, that the declarant must have shown in some way by conduct or language that he knew he was going to die. This, however, is without good sense. We may avail ourselves of any means of inferring the existence of such knowledge; and, if in a given case the nature of the wound is such that the declarant must have realized the situation, our object is sufficiently attained. Such is the settled judicial attitude. The circumstances of each case will show whether the requisite consciousness existed; and it is poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances." 2 Wigmore, Evidence, Sec. 1442.

In the case of *Williams* v. *State* (1924), 196 Ind. 84, 147 N. E. 153, the court, speaking by Myers, J., said: "The competency of this evidence (dying declarations) was a question for the trial court to be determined by the proof relative to the declarant's state of mind at the time he made the declarations. . . . Proof of the fact thus to be settled by the judge is not limited to the declarant's statement alone, but it may be inferred from the general statements, conduct, manner,

symptoms, and condition of the declarant, which flow as the reasonable and natural results from the extent and character of his wound, or the state of his illness."

In the instant case the signed statement of Lange was made only a few hours before his death; his suffering had been intense since the minute he was shot, a serious operation had been performed and he was apparently conscious of his condition and realized that death was near and so stated. And not only at the time he signed the statement he thought he was going to die, but immediately after he was shot he stated to Emma Maines that, "that was going to kill him, that he wouldn't get over it."

Considering all the facts as related, and the nature of the wounds received by Lange, we believe the trial court was warranted in the belief that the declarations were made under a sense of impending death, without hope of recovery. It is not manifest that the facts did not warrant the conclusion and therefore the ruling of the lower court upon the admission of the signed statement of Lange will not be disturbed. And as the evidence of Emma Maines merely corroborates the signed statement, which was made at a later time, no harm was done the defendant in the admission thereof.

The question is presented that the court erred in admitting in evidence the confession of the appellant, James Anderson. It appears from the evidence that after the killing of Lange the defendant went to Kentucky and was there some time before he was arrested and returned to Indiana. When arrested he was first taken to the jail at Versailles and then to the jail at Greensburg. At the Greensburg jail a written confession was made by the appellant and the same was introduced in evidence. At the time the confession was made the court reporter of Dearborn county, Judge

Lowe, Julius Schwing, Prosecuting Attorney of Dearborn county, Newt Coy, Sheriff of Decatur county, James Holbert, deputy sheriff, and possibly some others were present. While in the jail at Versailles the appellant contends that he was put in fear; that those present made threats against him and treated him roughly and that there was a large crowd present. On the other hand those present swore positively to the contrary; that the appellant was treated kindly and that he was not scared, and was not put in fear by those present. We have given the evidence our very careful consideration, and we believe that the defendant was treated fairly and with consideration in the Ripley county jail at Versailles.

The confession made by the appellant was in the presence of several witnesses. The appellant had told the sheriff at Greensburg that he wanted to tell his story and for him to call the other parties. When the parties arrived Anderson was brought into the corridor of the jail, he was introduced to those present. The evidence shows he started to talk before he sat down. That Mr. Schwing told him he didn't have to talk unless he wanted to; he said he wanted to make his confession and get it off his mind and, "that anything that was good enough to live by was good enough to die by." One of the witnesses testified that he acted normal and that he said he had religion and wanted to tell his story. The evidence shows he was told that he had the right to have counsel to advise him and if he made a confession it might be used against him and in response to this he said, "what was good enough to live by was good enough to die by." The evidence further shows that there was no promise made to him and no threats or coercion used. Counsel for appellant contends that the confession was secured partly by coercion, partly by promise, and partly by

threats. The evidence, other than that of the defendant himself, fails to show any elements of coercion or threats. Complaint that Dr. Jackson who was present at the Versailles jail urged the defendant to tell the truth, that it might be better for him, and that deputy sheriff Holbert told the appellant if he would make a confession, "it would save him some time." An admonition to tell the truth certainly can not, under any circumstances, be construed to be a promise and neither can the statement, "if he would make a confession it would save him some time" be construed as a promise. After reviewing the evidence we can not agree with the counsel for appellant that there was any coercion, threats, or promises made in order to secure the confession from the appellant. On the other hand we believe from the evidence that the confession was made by the appellant freely and without any coercion, threats, or promises.

> Section 2271, Burns 1926 (§2263, Baldwin's 1934), provides: "The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under the influence of fear produced by threats or by intimidation or undue influence; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence."

It can not be said that under the evidence in the instant case that the confession was made under the influence of fear, produced by threats or by intimidation or undue influences.

A confession, when offered in evidence against the accused, is prima facie admissible, and the necessity of showing its incompetency under the statute devolves upon him. *State* v. *Laughlin* (1908), 171 Ind. 66, 84 N. E. 756; *Hauck* v. *State* (1897), 148 Ind. 238, 46 N. E. 127.

The competency of the confession as evidence against the appellant was made an issue before the trial court for its determination. The evidence, in our judgment, fully supports its decision in holding the confession to be competent. This court is not authorized to weigh the evidence upon the question presented, nor attempt to reconcile any conflict therein, but, under a well settled rule, we are required to sustain the finding thereon of the lower court. *Hauck* v. *State, supra; Thurman* v. *State* (1907), 169 Ind. 240, 82 N. E. 64.

The appellant complains of the evidence given by the witnesses Gus Seiter and Roscoe Bradburn. These two witnesses were with the appellant, James Anderson, the night of December 28th, and the morning of December 29th. All three were riding in an automobile on the afternoon of the 28th, and later in the evening they visited two campsites— one known as the "Barn," and the other as "Spikes Camp." All three had been drinking some and Anderson had some trouble at each place. At "Spikes Camp" he was put out and after being put out he turned and shot through the door several times, and shot Benjamin Shaw who was in the house. After the shooting Anderson fled. Seiter and Bradburn were held in the "Camp" until Sheriff Herman Lange arrived, when they were placed under arrest and taken to Lawrenceburg by sheriff Lange.

The evidence of Seiter and Bradburn was introduced for the purpose of showing that a felony had been committed in the shooting of Benjamin Shaw, and for the purpose of showing that Herman Lange knew that a felony had been committed, and the nature thereof, and that Lange immediately took up the pursuit of James Anderson. And a few hours after the

shooting of Shaw, Lange met Anderson upon the road, and was shot by Anderson.

All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the defendant. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent, and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact. Underhill on Criminal Evidence (2 Ed., p. 163) and many cases cited.

The fact that the evidence introduced to prove the motive of the crime for which the accused is on trial points him out as guilty of an independent and totally dissimilar offense is not enough to bring about its rejection, if it is otherwise competent. Underhill on Criminal Evidence (2 Ed., p. 164, 165).

In the case of *State* v. *Moran* (1906), 131 Ia. 645, 109 N. W. 187, where it was necessary for the prosecution to show the absence of the accused from the state to avoid the statute of limitations the court held it was admissible to prove that the accused had spent several years in a penitentiary in another state, though this evidence tended to show that the accused had committed a felony.

It has been held that it may be shown that the victim of a homicide, for which the defendant is on trial, was a police officer, or other person who, when killed, was engaged in investigating the circumstances of another prior and independent crime of which the accused was

suspected. *Moore* v. *U. S.* (1893), 150 U. S. 57; *People* v. *Morse* (1909), (N. Y.), 89 N. E. 816; Underhill on Criminal Evidence (2 Ed., p. 166).

It has also been held where the accused kills an officer who attempts to arrest him without a warrant, proof that the accused had committed a felony is competent, as that is necessary to justify an arrest without a warrant. *State* v. *Honore* (1908), 121 La. 573, 16 So. 655.

In the case of *People* v. *Governale* (1908), (N.Y.), 86 N. E. 554, the accused shot a man and fled and was subsequently found by two officers in a building where he shot the two officers who were not in uniform, and killed one of them. The evidence of the prior crime was received because it might show the lawful character and purpose of the pursuit by the officers as the right of the accused, whose plea was self defense, to defend himself would not apply if he were being lawfully pursued by policeman after committing a felony.

Also in the case of *People* v. *Morse, supra,* it was held that evidence of a highway robbery, although not competent to prove the fact of another crime, was competent as a part of a continuous transaction, and to show that the defendant was liable to arrest, and as further showing the motive and intent of the defendant in firing the shot that killed the policeman.

So in the instant case it was proper to show that the appellant shot Benjamin Shaw for the purpose of showing that he had committed a felony, and that Sheriff Lange, in the proper discharge of the duties of his office, was pursuing the appellant, who had fled, in order to arrest him. It was also proper in order to show the motive and intent the appellant had in shooting Lange. Anderson had appeared at the two camps with a number thirty-eight revolver strapped around his body; he had shot Shaw, and then fled. He left his two friends and was fleeing from the scene of his

crime. He knew that in all probability that officers would pursue him; he was in a state of mind as he walked up the road on the fatal night to meet any emergency, and can it be doubted that when he met Lange he was ready to shoot anyone who attempted to arrest him? He was expecting an arrest, and doubtless had made up his mind to shoot it out, and this he did in cold blood. The dying statement of Lange was that the "wind must have blown my coat back, and when he saw my badge he shot me." The physical facts show that he just missed the badge, and that he was shooting to kill.

No error was committed by the lower court in admitting the evidence of the two witnesses, Seiter and Bradburn.

The appellant contends that the case should be reversed on account of the misconduct of two of the jurors, for the reason that they did not give true answers touching their qualifications as jurors. Several affidavits were filed upon this proposition. These affidavits are not properly in the record, for the reason they were not brought to this court by a bill of exceptions. *Alexander* v. *State* (1929), 202 Ind. 1, 170 N. E. 542; *Perfect* v. *State* (1925), 197 Ind. 401, 141 N. E. 52.

And even though the affidavits were properly in the record, where conflicting affidavits are filed a question of fact is presented to the lower court, and this court will not weigh conflicting evidence. *Clodfelder* v. *State* (1926), 198 Ind. 277, 151 N. E. 725.

The appellant very seriously contends that the lower court erred in the giving and refusing to give certain instructions. It is admitted, however, by counsel for appellant that none of the instructions are properly in the record for our consideration,

but they contend that owing to the death penalty given the appellant that this court should consider the instruction although not properly before the court.

Considering the importance of this case to the appellant, and upon the urgent request of counsel, this court has given serious thought upon the question of instructions. The most serious objection presented is to instruction number 32. It must be conceded that the first paragraph of this is erroneous, and so decided in the case of *Dorak* v. *State* (1915), 183 Ind. 622, 109 N. E. 771. The instruction in the Dorak case is identically the same as the first paragraph of instruction number 32 in the instant case. However, in instruction number 32 in the instant case the following paragraph is added: "And, if, upon the facts and circumstances shown by the evidence in this case, you should find beyond a reasonable doubt that the defendant, James Anderson, did take the life of Herman Lange, and in so doing, was not honestly, and in good faith exercising such right of self defense, he can not be acquitted upon such ground." This paragraph is a correct statement of the law, and modifies the first paragraph to a great extent, but it can not be said that it entirely corrects it. Could the jury have been misled by reason of the giving of this instruction? We do not believe so. More than fifty instructions were given to the jury. It was repeatedly stated in the instructions that the burden was upon the state to prove the defendant guilty beyond a reasonable doubt; that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt, that this presumption prevails until the close of the trial, and that the evidence should be weighed in the light of the presumption of innocence, and that all the evidence should be reconciled, if possible, with the presumption of innocence.

The court properly instructed the jury as to the law

of self defense and stated: "If after considering all the evidence, you have a reasonable doubt as to whether the defendant acted in self defense, then he can not be convicted." We can not believe that considering the instructions as a whole that the jury was misled by the giving of any of the instructions.

Instructions are to be considered with reference to each other, and as an entirety, and error in a particular instruction will not justify a reversal unless it is of such a nature that the whole charge of which it forms a part is thereby vitiated so as to mislead the jury as to the law of the case, and when so considered there was no material contradiction in the instructions. *Gielow* v. *State* (1926), 198 Ind. 248, 153 N. E. 409. Citing many cases.

We do not believe the jury could have been misled as to the law of the case when the instructions are considered as a whole.

We have given this case our careful consideration, mindful of the fact that a human life is in the balance, but we believe after considering all the evidence and the instructions, that the appellant had a fair and impartial trial and that this cause should be affirmed.

Judgment affirmed.