## GIPE v. THE STATE.

[No. 20,575. Filed November 1, 1905.]

1. EVIDENCE.—*Homicide.*—*Dying Declarations.*—The character of the injuries to the decedent in a homicide case may warrant the inference of decedent's conviction of imminent death and thus make such decedent's declarations admissible as dying declarations. p. 436.

2. SAME. — *Dying Declarations.* — *Competency.* — *Trial Court's Duty.*—The competency of alleged dying declarations is a question for the trial court, and its decision will not be disturbed on appeal unless manifestly erroneous. p. 436.

3. SAME.—*Dying Declarations.*—*Admissibility.*—Where decedent expressed the belief in the afternoon that she would not get well and she grew visibly weaker until midnight when she made certain statements concerning her injuries, her physician having given up all hope of recovery, such declarations are admissible. p. 437.

VOL. 165—28

4. INDICTMENT AND INFORMATION. — *Homicide.* — *Manner of Death.*—An indictment charging that defendant committed the murder of decedent by ways and means unknown to the grand jury is sufficient.   p. 438.

5. TRIAL. — *Instructions.* — *Homicide.* — *Proving Commission of Murder as Charged.*—Where the indictment charges that defendant killed decedent by "striking and wounding and forcibly throwing" her into a well, an instruction, that defendant would be guilty if, in the commission of burglary, he had so frightened decedent as to cause her to become insane, whereupon she jumped into a well and thus inflicted mortal injuries, is erroneous, such facts failing to support the charge.   p. 439.

6. SAME.—*Instructions.—Homicide.—Manner of Killing.*—Upon an indictment for murder by "striking and wounding and forcibly throwing" decedent into a well, an instruction, that defendant's guilt is established by proof that in an attempt at burglary he frightened decedent so that she suddenly became insane and jumped into the well inflicting mortal injuries, is prejudicial error, though defendant was found guilty of involuntary manslaughter only.   p. 439.

7. INDICTMENT AND INFORMATION.—*Homicide.—Minor Degrees.*—An indictment for murder includes every degree of felonious homicide, and a conviction for a lower degree of homicide can not be disturbed on appeal though the proof shows murder.   p. 439.

From Henry Circuit Court; *John M. Morris,* Judge.

Prosecution by the State of Indiana against Ollie Gipe for murder.   From a judgment of conviction for involuntary manslaughter, defendant appeals.   *Reversed.*

*William A. Brown* and *Fred. C. Gause,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild* and *W. C. Geake,* for the State.

GILLETT, J.—Appellant was charged by indictment with the murder of one Mollie Starbuck and her infant child. There was a verdict of involuntary manslaughter, on which judgment was pronounced.

The first question which this appeal presents is whether the trial court erred in admitting as dying declarations certain statements of said Mollie Starbuck.   On Saturday night, between the hours of 9 and 10 o'clock, said decedent

was found, in a frenzied condition, with said infant, in a shallow well, situate about one thousand feet to the rear of her house. She and the child were the only members of her family who were at home during the evening, and there was evidence tending to show that the house had been broken into that night, at some hour previous to the time that they were found in the well. Said declarant died about 4 o'clock a. m. the next Monday. One of the attending physicians testified that the cause of death was acute pulmonary congestion, while another physician, in testifying, ascribed her death to shock, fright and exhaustion. The evidence warranted the conclusion that her condition and death were due to her experience of the preceding Saturday night. She continued very sick from the time she was found. She was in a highly nervous condition, and was suffering from pulmonary hemorrhage. She was better Sunday morning, but during that time, and up to her death, her breathing was heavy and labored. Between 2 and 3 o'clock p. m. of said day she asked one of the attending physicians whether he thought she could get well. He told her he had hopes of her recovery, that she had improved nicely, and he saw no reason why she should not get well. She replied that she did not believe she would. Between that time and midnight Sunday, when the declarations were made, there was a gradual decline in her condition, and said physician testified that at the latter hour he had no hope of her recovery. The declarations in question, and the circumstances in which they were made, are thus stated by said witness: "At one of her waking spells I said to her: 'Mollie,' I says, 'do you know me?' And she made no answer, and she looked at me, and I said: 'If you can not answer me, Mollie [she was getting weak], raise your hand if you know me,' and she raised her hand or finger. And I said: 'There are some, things we want to know, and very badly, and if you can possibly let us know any way whatever, do so.' I said: 'Was it some bad man carried you off?' And she summoned a

great effort and said: 'Yes.' The nurse asked her then: 'Did they come in at the window?' And she said: 'Yes,' and looked toward the window where the screen had been torn away. And then the nurse asked her if there were more than one, and she said: 'I don't know.' And then I asked her if she recognized any one, and she made some answer, but we could not understand her—she was getting very weak."

With this statement of facts, we proceed to the discussion of the admissibility of said declarations. In *John's Case* (1790), 1 East, Pleas of the Crown, 357, 358, from the MSS. of Buller, J., it appears that it was the unanimous opinion of the judges that "If a dying person either declare that he knows his danger, or it is reasonably to be inferred from the wound or state of illness that he was sensible of his danger, the declarations are good evidence." That the character of the wound may of itself warrant the inference that the declarant was under a sense of certain and speedy death is settled upon the authorities. *Woodcock's Case* (1789), 2 Leach 563; *Anthony* v. *State* (1838), 19 Tenn. *265, 33 Am. Dec. 143; *McLean* v. *State* (1849), 16 Ala. 672; *Hill's Case* (1845), 2 Gratt. 594, 608; 3 Russell, Crimes (9th Am. from 4th London ed.), *250. And see *Green* v. *State* (1900), 154 Ind. 655.

The question as to the competency of the declarations was one which the trial court was called on to decide before admitting the testimony. *John's Case, supra; Donnelly* v. *State* (1857), 26 N. J. L. 463; *Starkey* v. *People* (1855), 17 Ill. 17; 1 Roscoe, Crim. Ev. (8th ed.), *37; 1 Bishop, Crim. Proc. (4th ed.), §1212; 1 Elliott, Evidence, §355. Its conclusion that the declarations were admissible is one which will not be disturbed on appeal, unless it is manifest that the facts did not warrant the conclusion. *Swisher's Case* (1875), 26 Gratt. 963, 21 Am. Rep. 330. Professor Wigmore, who discusses the propositions above laid down, says: "In ascertaining this con-

sciousness of approaching death, recourse should naturally be had to all the attending circumstances.    It has been contended that only the statements of the declarant could be considered for this purpose; or, less broadly, that the nature of the injury alone could not be sufficient, *i. e.,* in effect, that the declarant must have shown in some way by conduct or language that he knew he was going to die.    This, however, is without good reason.    We may avail ourselves of any means of inferring the existence of such knowledge; and, if in a given case the nature of the wound is such that the declarant must have realized his situation, our object is sufficiently attained.    Such is the settled judicial attitude. *    *    *    No rule can here be laid down.    The circumstances of each case will show whether the requisite consciousness existed; and it is poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances." 2 Wigmore, Evidence, §1442.

In this case it appears that on Sunday afternoon said decedent expressed the belief that she would not get well.    Assuming that to have been her opinion then, and considering that she gradually grew worse until the physician had abandoned hope of her recovery, and bearing in mind her extreme weakness, as evidenced by the physician's testimony as to the circumstances in which her statements were made, we can but regard the deduction of the trial court as authorized that the declarations were made under a sense of impending death, without hope of recovery. The remarks of Eyre, C. B., in *Woodcock's Case, supra,* seem quite apropos in this connection, but we need not pause to quote them.

The indictment charged that appellant "did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder Mollie Starbuck and Beulah May Starbuck, by then and there feloniously, purposely and with premeditated malice unlawfully striking and wounding and forcibly throwing said Mollie Starbuck and Beulah May

Starbuck into a well, then and there being." Appellant contends that, in view of the charge in the indictment as to the means by which the deaths alleged were caused, the court erred in giving to the jury instruction numbered three. By that instruction the court, after calling the attention of the jury to the provisions of statute relative to the killing of a human being in the perpetration of, or attempt to perpetrate, the crime of robbery or burglary, charged that if the jury found that appellant, either by himself or with others confederating with him, broke and entered the Starbuck house under certain circumstances set forth in the instruction (amounting in law to a burglary), and that by reason of said acts said Mollie Starbuck was put in great fear and agitation, to such an extent that she lost her reason and became insane, and that by reason thereof, while in such a state of insanity, she left the house and jumped into the well, carrying with her the infant child, and that by reason of her exposure therein, and her extreme fright and agitation, brought upon her by the facts aforesaid, she afterward died, appellant would be guilty of murder in the first degree. In this case, as will be observed, the charge was a killing by "striking and wounding and forcibly throwing" said Mollie Starbuck and Beulah May Starbuck into a well. This clearly means that the killing was accomplished by physical violence. In an English *nisi prius* case involving a state of facts somewhat similar to that involved in the hypothesis embodied in said instruction, we find that the facts as to the manner in which death occurred were pleaded. *Reg.* v. *Pitts* (1842), 1 Car. & Mar. 284. It is settled in this jurisdiction that a charge that the killing was

4.   by ways and means unknown to the grand jury is sufficient, and then it is a question whether the proof supports the averment. *Waggoner* v. *State* (1900), 155 Ind. 341, 80 Am. St. 237; *Donahue* v. *State* (1905), *ante,* 148. We have here, however, a case in which it is alleged

that the killing was accomplished by an act of physical violence. The averment is descriptive of the crime charged, and it was therefore necessary to prove the allegation substantially as laid. *Taylor* v. *State* (1891), 130 Ind. 66. As respects the allegation and proof as to the manner of death, it is sufficient if the proof agree with the allegation in its substance and generic character; precise conformity is not required. But, to quote from one of the older writers: "If a person be indicted or appealed for one species of killing, as by poisoning, he can not be convicted by evidence of a totally different species of death, as by shooting, starving, or strangling." 1 East, Pleas of the Crown, 341. See, also, *Mackalley's Case,* 9 Coke 66; *Rex* v. *Waters* (1835), 7 C. & P. 597; *State* v. *Dame* (1840), 11 N. H. 271, 35 Am. Dec. 495; *State* v. *Smith* (1851), 32 Me. 369, 54 Am. Dec. 578; *State* v. *Fox* (1856); 25 N. J. L. 566; *State* v. *Hoyt* (1868), 13 Minn. 132, 142; *State* v. *Jenkins* (1867), 14 Rich. (S. C.) 215, 94 Am. Dec. 132; 10 Ency. Pl. and Pr., 128.

It is contended that the above instruction is shown to have been harmless, because the jury did not find appellant guilty of murder, but of involuntary manslaughter. There is no merit in this contention. The instruction, in view of the evidence, was strongly calculated to be influential, because of its indication to the jury that there might be a conviction for the homicide, if such it was, although the conclusion of the jury as to the manner of killing might be that death was caused by a means totally different from that which was charged.

It must not be forgotten that a charge of murder in the first degree comprehends every grade of felonious homicide, and that a finding of involuntary manslaughter can not be disturbed on appeal because the evidence shows that the defendant was guilty of murder. *Hasenfuss* v. *State* (1901), 156 Ind. 246. It has been declared, and properly so, that if an "error is in itself

radical and affects substantial rights in a material degree, or may probably so affect such rights, then the error can not be regarded as uninfluential unless the record, with decisive clearness and strength, affirmatively shows that it did not influence the final decision in the case to the prejudice of the party who complains." Elliott, App. Proc., §643, note. After a careful consideration of the question which the giving of said instruction presents, viewed, not in the abstract, but in the concrete, as applied to the testimony in the record, it is our conclusion that it does not clearly appear that appellant was not prejudiced. A reversal must therefore follow.

Judgment reversed, and a new trial ordered.