## SOUTHERLAND v. STATE OF INDIANA.

[No. 26,492. Filed October 25, 1935. Rehearing denied January 6, 1936.]

*William McClain* and *Thomas W. Lindsey,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Urban C. Stover,* Deputy Attorney-General, for the State.

HUGHES, J.—The appellant was indicted in two counts, one charging murder in the first degree, and the other murder in the second degree. He was tried and found guilty of murder in the second degree and sentenced to the Indiana State Prison for life.

The error relied upon for reversal of the judgment is that the lower court erred in overruling appellant's motion for a new trial. There are many reasons assigned for a new trial, the greater number of which are based upon the giving and refusing to give certain instructions. Error is also predicated upon the admission of certain testimony and that the verdict is not sustained by sufficient evidence and is contrary to law.

It is contended by the appellant that instruction Number 4 given by the court is erroneous. The instruction is given in the exact language of the statute relative to voluntary manslaughter. Section 10-3405, Burns 1933, §2408, Baldwin's 1934. The instruction is not erroneous. Complaint is made of instruction Number 5. In this instruction, the court stated the distinction between murder in the first degree, the second degree, and manslaughter, and with reference to manslaughter used the following language: "and in manslaughter the killing must have been done without malice expressed or implied but voluntarily upon a sudden heat." The word "unlawfully" was omitted. We do not think that the omission of this word is fatal to the instruction. The court in the previous instruction Number 4 had just given the jury a correct definition of manslaughter. All instructions must be considered together and when this is done it cannot be said that the jury was misled by instruction Number 5, nor that it was

harmful to the appellant. Instruction Number 13, complained of by the appellant, is as follows:

"If you should find from all the evidence in this case beyond a reasonable doubt that the defendant did shoot and kill Glenwood Lamb, using a deadly weapon in such manner as was likely to and did produce death, the purpose on the part of the defendant to kill may be inferred from the act itself."

We do not think this instruction is erroneous. The court was not instructing in this instruction, as indicated by appellant, on the law of self-defense. This is properly covered in other instructions, and, moreover, the court is not required to cover all the law in one instruction.

The evidence in the case shows that the appellant killed the deceased with a revolver. This is a dangerous and deadly weapon, and, as was said in the case of *King* v. *State* (1917), 187 Ind. 220, 118 N. E. 809:

"The revolver used by appellant in this instance was a dangerous and deadly weapon and its use as here shown by the uncontradicted evidence would authorize the inference to kill.

See *Keesier* v. *State* (1899), 154 Ind. 242, 56 N. E. 232. The appellant also complains of instruction Number 15 as not being applicable to the evidence. The instruction is lengthy and we will not set it out. The instruction deals with the use of a deadly weapon and explains in detail when one may use such a weapon and when he cannot. It is clearly a correct statement of the law and not subject to criticism. The same may be said of Number 16, complained of by the appellant.

The appellant contends that instruction Number 6, tendered by him and refused by the court, should have been given. This instruction was upon the law of self-defense. This phase of the instructions was fully covered by instructions Numbers 1, 14, and 15 given by the court and instruction Number 10

tendered by appellant and given by the court. No error was committed in refusing to give instruction Number 6 tendered by appellant.

Appellant further complains that the court erred in refusing to give instruction Number 11 tendered by appellant. This instruction was a general one upon the duties of jurors and was covered by other instructions. No possible harm could have resulted to the appellant by the refusal of the court to give this instruction.

The appellant also complains of the court in refusing instructions Numbers 13 and 15 tendered by him. The language contained in each of these instructions is practically the identical language contained in instructions given by the court. They amounted to a repetition of the same principles of law and no harm was done appellant in refusing to give either of them.

The appellant further contends that the court erred in permitting Stella Lamb, mother of the deceased, to testify to certain evidence. She was a witness for the State and on direct examination she was asked to tell the jury what the deceased told her as to how he got shot. The appellant insists that what the deceased told his mother was not a proper dying declaration. The deceased was shot on July 1, 1933, between one and two o'clock in the morning; a lead bullet thirty-two caliber in size was taken from his body and he died about 4:30 P. M. of the same day. The evidence shows that he was shot in the left side, "entering the left chest being deflected by rib down through the diaphragm through the extreme left lobe of the liver, a portion of the stomach, pancreas, and thence over to the left and buried in the deep structures of the left flank." It is in the evidence that prior to the time he had the conversation with his mother and after he had been

shot, he made the statement that, "I am going to die and I know it—I can't live over this—I know I am going to die because he really got me."

It is apparent that the deceased thought he was going to die from the injuries received and that his death was impending. The nature of the wound inflicted would naturally cause him to believe that death was near and it was.

In the case of *Gipe* v. *State* (1905), 165 Ind. 433, 75 N. E. 881, the court quoted with approval the following language (p. 436) :

> " 'If a dying person either declare that he knows his danger, or it is reasonably to be inferred from the wound or state of illness that he was sensible of his danger, the declarations are good evidence.' "

And the court said (p. 436) :

> "That the character of the wound may of itself warrant the inference that the declarant was under a sense of certain and speedy death is settled upon the authorities."

The question as to the competency of dying declarations is one for the trial court to decide before admitting the testimony and its conclusions will not be disturbed on appeal unless it is manifest that the facts do not warrant the conclusion. *Gipe* v. *State, supra*. No error was committed in admitting the testimony of the witness, Stella Lamb.

Complaint is made by appellant that the court erred in permitting the witness, Tony Robles, to answer a certain question propounded to him by appellant's attorney. The question asked was:

> "Did you hear him (Lamb) say anything about going down to Slim Southerland's place of residence?"

The record shows the answer was:

> "No name was mentioned."

The answer remained in the record and no other question was asked and therefore no error was committed.

The appellant's attorneys asked a witness the following question:

"Whether or not he (Lamb) said that at that ▮▮▮ time and place that he was going down the street and clean out the place—(Southerlands)?"

The State objected to the question and the objection was sustained. The record discloses no evidence to show that any such statement had been communicated to the appellant before the homicide. It is generally held that, in a case of homicide, previous threats by the deceased are admissible if they have been communicated to the defendant before the homicide. And for the purpose, in cases of doubt, of showing that the deceased made the attack, and if so, with what motive, his prior declarations, uncommunicated to the defendant, that he intended to attack the defendant are admissible in evidence if proof is made that there was an overt attack, and that the defendant at the time was in apparent imminent danger. *Medly* v. *State* (1915), 183 Ind. 660, 110 N. E. 58; *Ellis* v. *State* (1898), 152 Ind. 326, 52 N. E. 82. In the instant case there is no evidence that any declarations, if made, of the deceased were ever communicated to the appellant nor does the evidence show that the deceased made the attack and that appellant was in imminent danger. The objection was properly sustained.

The last contention made by appellant is that the verdict is not sustained by sufficient evidence and is contrary to law.

The evidence shows that Allen Freeman and Gladys Sullivan came to Evansville in March, 1933, and the Sullivan woman went to live with Rose French, ▮▮▮ in said city, who ran a bootlegging and house of prostitution. Southerland, the appellant, lived

with the French woman and worked with her in conducting said place of business. Freeman had lived with the Sullivan woman for several years. Freeman and Lamb, on the night in question, went to the French home to get the Sullivan woman so that Freeman might live with her. When they arrived at the French home, Southerland and the two women were sitting around a table drinking, Southerland was asked to come outside. He came out and was asked by Lamb and Freeman to get Miss Sullivan to come out to them. Lamb asked Southerland for a cigarette. He gave him a package and Lamb stuck them in his pocket. Southerland asked him if he wasn't going to give his cigarettes back to him. He said, no, and kicked at him and told him to go in the house. He went in the house and Lamb followed him on the porch. In a short time Lamb came running back toward Freeman and told him to run that "Slim" had a gun. They ran a short distance; "Slim" was running after them and Lamb jumped at him and "Slim" jumped back and shot Lamb. The evidence further shows that the French woman told appellant not to take the gun out. Southerland, the appellant, testified that when Lamb and Freeman first came to the house, Lamb had a knife and threatened appellant with it, and he also insisted that Lamb had a knife in his hands when he shot him. There was evidence from no one else that Lamb had a knife; other witnesses testified that he did not and there was no evidence that he had been cut as he claimed.

The appellant, when he came out of the house with the revolver, testified that he was going to a restaurant to get something to eat. This was evidently an afterthought of appellant to show he was not following Lamb and Freeman.

The weight of the evidence and the inferences to be drawn therefrom are matters entirely within the prov-

ince of the jury. This court will not weigh the evidence and where there is evidence to sustain the verdict it will not be set aside. We have carefully considered all the evidence given in the case and believe that it is sufficient to sustain the verdict and that it is not contrary to law.

Judgment affirmed.