Jackson Lee DEAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 1280S457.

Supreme Court of Indiana.

March 15, 1982.

Rehearing Denied May 24, 1982.

Carr L. Darden, Acting Public Defender, Robert H. Hendren, Sp. Asst. Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Jackson Lee Dean was found guilty by a jury of the crime of first-degree murder on October 20, 1976. On recommendation of the jury, the trial court sentenced Dean to life imprisonment on October 29, 1976. Rather lengthy proceedings in the trial court followed in which defendant changed counsel and filed several belated motions to correct error, all of which were heard by the trial court. Dean's last belated motion to correct errors was filed on April 18, 1980, and hearing was held on this motion on June 13, 1980. On September 26, 1980, the trial court overruled this belated motion to correct errors and a praecipe was filed for appeal to this court on October 23, 1980. After extension of time to file the record of proceedings, this case was fully briefed in November, 1981.

Appellant raises four issues for our consideration as follows: 1) sufficiency of the evidence as it relates to self-defense; 2) prosecutorial misconduct; 3) improper admission of a dying declaration; and 4) ineffective assistance of counsel.

The evidence showed that shortly after midnight on May 25, 1976, Bobby Price and Bobby Hall knocked on the door of Appellant's home at 2116 Walnut Street, Anderson, Indiana. The purpose of their coming to Dean's house was apparently to settle a dispute regarding some property Price had rented from Dean. Although apparently Price, Hall, and Dean had been friends for some years, there was antagonism between Price and Dean over this property. Hall testified that they knocked on the door and when Dean came to the door, he had a pistol in his hand and aimed it at both of them. It was Hall's testimony that he kicked the revolver out of Dean's hand, unloaded the weapon and threw the weapon and the rounds of ammunition on the floor. A fight then ensued between Price and Dean, that continued into the bedroom and on the bed. There was evidence that Price was on top of Dean and then got up and walked into the other room. There was evidence that Dean then jumped on Price and began hitting him again. At one point Dean attempted to strike Price with a wine bottle but hit Hall instead. Dean reached for a rifle that was sitting in the corner of the living room, but Hall grabbed it first and unloaded it, throwing the shells on the floor and setting the rifle back in the corner. During the scuffle, Appellant admitted, and Hall testified, that at no time were both of the men fighting or hitting the Appellant. Hall took the wine bottle from Dean after Hall had been struck with it, and struck Dean with it and pushed him against the wall. Price left the home hurriedly, and Hall, after hearing a click that indicated to him that Dean was loading the rifle, ran from the home. Both Hall and Price ran down the sidewalk away from the home. Dean loaded the rifle, ran out of the house and shot at Hall and Price. Price was struck in the back from a distance of 104 feet. Dean's wife exclaimed, "My God, you dropped one of them," and Dean replied, "Good." Price later died of injuries from the rifle slug which entered his back just above the right kidney.

I.

It is Appellant's contention that the evidence was insufficient to negate his claim of self-defense. It is well settled in Indiana that to prevail on a claim of self-defense, the defendant must have been in a

place where he had a right to be, acted without fault, and acted in reasonable fear or apprehension of death or great bodily harm. *Loyd v. State*, (1980) Ind., 398 N.E.2d 1260; *Berry v. State*, (1978) 268 Ind. 432, 376 N.E.2d 808. The primary thrust of appellant's argument is that he was in his own home where he had a right to be and was accosted by Hall and Price, who had come to his home to settle a dispute. There was evidence that defendant's wife was in fear and was screaming during the fight that ensued in their home. There was also evidence that she ran out of the home to a neighbor's, asked for help and told the neighbors that two men were trying to kill her husband. There also was evidence that Dean was more the aggressor than either Price or Hall and that at no time were both of them attacking Dean. Hall testified that they were met at the door by Dean, who was leveling a pistol at them. Although cartridges that would fit several types of guns were found in the home, a pistol was never found there. A holster that would accommodate a pistol was found in the home. There was no dispute in the fact that the rifle was unloaded by Hall when Dean reached for it during the discussions with Price and that Dean re-loaded it and pursued Price and Hall after they had fled his home.

■  The question of whether a person is justified in using deadly force to defend himself is one for the trier of fact to determine by consideration of all the facts bearing on that issue. A person is justified in purposely killing an assailant in self-defense if he has reason to believe and does believe that he is in danger of death or great bodily harm. *Loyd v. State, supra.* Upon review for sufficiency, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. *Loyd v. State, supra; Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831. In such a review, we will not weigh conflicting evidence nor judge the credibility of the wit-

nesses. *Roselle v. State*, (1976) 265 Ind. 173, 352 N.E.2d 750.

■  There was sufficient evidence of probative value from which a jury could find beyond a reasonable doubt that the defendant did not act in a reasonable fear or apprehension of death or great bodily harm, and that all the elements of first degree murder were present. Although the evidence was conflicting in many respects, there was direct evidence from which the jury could find that Dean was more the aggressor than either Hall or Price with regard to the fight inside Dean's home. It is true, of course, that a person has a right to defend his own home and to defend himself in it. There was also evidence, however, from which the jury could find that Price and Hall attempted to retreat and leave the home and were prevented from doing so by Dean. There was testimony that Price left the fight in the bedroom and attempted to leave, telling Dean to "cool it" and starting to walk away. Dean then lunged at him and started fighting again. Shortly after this, both Hall and Price hurriedly left the home. Price left first and was all the way out of the door when Hall heard the rifle being loaded. Hall then left quickly and both of them ran down the sidewalk. They were running away from the defendant when he raised his gun and fired at them. This fact is not in dispute. Many witnesses observed this occurrence and Price was found with a rifle slug in his back, 104 feet from the point where Dean fired at him. There were witnesses who testified Dean had told them just prior to this occurrence that if Price did not pay him the money he owed him for his property he was going to shoot him. Thus, there was evidence from which the jury could find there was premeditation and malice in the shooting. Further, malice and purpose could be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *Horton v. State*, (1976) 265 Ind. 393, 354 N.E.2d 242, 244; *White v. State*, (1976) 265 Ind. 32, 349 N.E.2d 156, 160.

There was ample evidence from which the jury could reasonably find beyond a reasonable doubt that defendant was not without fault and that he did not act in reasonable fear or apprehension of death or great bodily harm at the time he shot the victim. Therefore he was not justified in using deadly force in defense of himself. We accordingly will not disturb the jury's judgment in this regard.

## II.

Appellant questions the conduct of the prosecuting attorney in making statements to the jury during final arguments. Although appellant mentioned several incidents in his brief, he objected to only one such remark. Since he did not object to the other remarks made by counsel, he did not put the trial court in a position to have an opportunity to pass on the propriety of such remarks. We will not consider those issues. *Norton v. State*, (1980) Ind., 408 N.E.2d 514, 525.

During his final remarks, the prosecutor stated, "In my opinion based on this evidence and similar situation, Jackson Dean is capable of doing another act like this." Defendant objected to the remark and the court sustained the objection, admonishing the jury to disregard the remark. The law, of course, presumes that the jury will heed the trial court's admonition to disregard improper remarks and prompt admonition is normally sufficient to protect the defendant's rights. *Avery v. State*, (1978) 269 Ind. 432, 381 N.E.2d 1226; *Bailey v. State*, (1980) Ind., 412 N.E.2d 56. The remark was not one wherein the prosecutor represented his conclusion to be based on personal knowledge of the accused's guilt or innocence. It implied no personal knowledge and indicated that his opinion was based on the same evidence the jury had heard. It therefore did not place Dean in a position of grave peril sufficient to unduly prejudice him. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

Appellant claims further the State acted improperly by failing to comply with an order to produce grand jury testimony. Apparently defense counsel had some problems in obtaining the transcript of the grand jury proceedings prior to trial. At the hearing on the belated motion to correct errors, defendant's counsel stated that there was a delay in obtaining the transcript and that there was some conflict between the prosecuting attorney and the trial judge as to just whose responsibility it was to see to it that the transcript was furnished to defense counsel. When the trial immediately preceding defendant's trial was completed, and the court was ready to proceed with defendant's trial, defendant's counsel stated he still did not have the transcript and discussed with the defendant, Dean, the advisability of seeking a continuance so that it might be obtained. Counsel stated that Dean was so anxious to get to trial that Dean objected to continuing the cause any further, and wanted to proceed immediately with trial. He further stated, "We pretty much knew because of the other statements what these people were going to testify to so we decided to go on and try to preserve it as error." The only witness whose testimony he questions now is Detective Randolph, who stated before the Grand Jury that in his opinion defendant may have been "under something" and was not acting normally at times. He said that one minute he would be calm and the next minute he would seem agitated. At the trial, Randolph tended to agree with all the other police officers and witnesses that Dean seemed to be in control of himself and knew what he was doing at the time of the incident. There was testimony by other witnesses that Dean acted normally until they put the handcuffs on him and then he fell down, or collapsed, and told the police he hurt all over. He was taken to a hospital and examined, found to be well oriented, suffering from multiple superficial abrasions and some bruises and swelling. He was released to the officers with a small package of mild pain medication. Appellant's attorney, Jack Quirk, further indicated in his deposition to the court at the hearing on the defendant's latest belated motion to correct errors, that he had talked

to Randolph and Randolph was going to say that Dean was not acting like a normal person. Quirk stated that in his experience, a defense which implies intoxication or otherwise being "on something" may not be helpful to an accused and, in fact, may prejudice an accused before the jury. He then decided that strategically it was wiser not to bring out that aspect of Dean's behavior. It appears then that there was an opportunity for the defendant to obtain the grand jury minutes before being required to go to trial, but that he chose to go immediately to trial without seeking a continuance since he thought it would be to his advantage to do so. Dean's failure to request a continuance waived the alleged error regarding a failure to produce grand jury minutes. *Gregory v. State*, (1972) 259 Ind. 295, 286 N.E.2d 666.

■ It also appears that appellant's attorney thought that it would be better strategy to omit Randolph's appraisal that Dean was "under something," which was made before the grand jury, from submission to the jury. Such tactics will not be speculated upon at the appellate level. *Willis v. State*, (1980) Ind., 401 N.E.2d 683; *Dull v. State*, (1978) Ind., 372 N.E.2d 171. No error is presented here that would justify our granting Appellant a new trial.

### III.

■ Officer Ronald Young accompanied the victim, Price, to the hospital. He testified that when the doctors and nurses were working on him they asked him his name but he did not respond to the question. One of them then asked him how he was shot and the kind of weapon used. He stated to them that he thought it was a revolver because "he had seen a gun in the guy's hand." It was this question that the defense had objected to on the grounds the answer would be only hearsay. The court overruled the objection and allowed the statement to be made before the jury. It is the State's contention that the statement was admissible as an exception to the hearsay rule since it comes under the definition of a dying declaration. A standard for

determining the admissibility of a dying declaration was set out by this Court in *Hoskins v. State*, (1978) 268 Ind. 290, 375 N.E.2d 191, 193, as follows:

"It is true that in order for a dying declaration to be admissible it must be shown that the declarant knew that death was certain or that he had given up hope for recovery. *Walker v. State*, (1976) 265 Ind. 8, 349 N.E.2d 161. In the case at bar one witness testified that Boyer was thrashing around and asking those around him to let him die. The other witness testified that Boyer was saying, "I'm hurt, I'm dying, leave me alone." From this evidence the trial court in its discretion could reasonably have found that the declarant believed his death was certain. Thus there was no error in admitting the evidence as a dying declaration of the decedent."

■ In support of that position, State's witness Ronald Young testified that when he first saw Price, Price's intestines were hanging outside of his stomach. He further stated that in the ambulance en route to the hospital, Price stated to him two or three times, "Hurry, I'm going fast," and further stated to him that he was in great pain. The trial judge indicated that he found the statement to be admissible since the man was seriously ill and at the point of death. It is within the discretion of a trial court to determine whether or not the declarant believed his death was certain. As the trial judge indicated in his ruling; there is a judgment call to make: "It would be fairly hard for someone to say are you dying do you want to make a statement. . . ." There appeared to be ample circumstances here for the trial court to determine that this statement was admissible as a dying declaration and we accordingly find no error in its admission.

### IV.

■ Finally, appellant claims he had ineffective assistance of counsel. He details several incidents which involve questions of judgment and strategy calls in planning and handling a defense. As we

have stated many times, there is a strong presumption that an attorney has properly discharged his duties to his client and to overcome this presumption it must be shown that what the attorney did or did not do resulted in the trial as a whole being such a mockery of justice as to shock the conscience of the court. *Rahim v. State*, (1981) Ind., 417 N.E.2d 343, 345; *Leaver v. State*, (1981) Ind., 414 N.E.2d 959, 960; *Herman v. State*, (1979) Ind., 395 N.E.2d 249, 253. As we have already indicated in this opinion, there were steps taken by defendant's attorney at the request and direction of defendant because of a determination of strategy or because of defendant's anxiety to proceed to trial as quickly as possible. The evidence shows that defendant's counsel conducted a vigorous defense in his behalf. He examined and cross-examined witnesses, called many witnesses to testify in defendant's behalf, attended all of the proceedings of the court, pretrial and trial, filed motions and made argument when called for and did so in a competent manner. To question the judgment of this attorney now would be putting us in a position of using hindsight to second guess his judgment and strategy calls. Looking to the totality of the circumstances, we find that the attorney here properly discharged his duties to his client and provided him with adequate and effective representation. *Lever v. State, supra; Herman v. State, supra; Rahim v. State, supra.*

The trial court is in all things affirmed.

HUNTER, DeBRULER and PRENTICE, JJ., concur.

GIVAN, C. J., would reduce the charge to manslaughter.