**Michael R. LYNCH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 20A03–8906–CR–218.**

Court of Appeals of Indiana, Third District.

April 12, 1990.
Rehearing Denied May 29, 1990.

Thomas A. Murto, Murto & Holbrook, Goshen, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Defendant-appellant Michael R. Lynch appeals his jury conviction for murder, a Class A felony.

On January 12, 1988, the defendant, who resided with his parents, went to his mother's bedroom and retrieved a .410 bolt action shotgun. While his father, the victim, was in the shower, defendant entered the bathroom, positioned the gun within 2 to 3 inches of his father's body and fired.

Defendant then called 911 but when asked his name he hung up. The defendant fled from the residence on foot.

When police arrived at the residence they discovered the victim lying on the kitchen floor. Officer Schollian asked the victim who shot him and he replied that his son had shot him. The victim advised police that his son had left on foot.

Shortly thereafter, defendant was apprehended as he was walking on the street. The defendant had blood all over his face, hands, and clothing. The blood was his father's. Defendant was arrested and his rights were read to him. Defendant indicated that he understood those rights and asked, "How's my dad?" A video-taped statement was taken from the defendant in which he claimed the blood on his clothing was from hunting deer.

Appellant raises four issues for our review:

(1) whether the trial court erred by refusing to give the jury the defendant's tendered Instruction No. 5, a lesser included offense instruction on involuntary manslaughter;

(2) whether the trial court erred by refusing to give the jury the defendant's tendered Instruction No. 4, an instruction concerning reduced mental capacity;

(3) whether the trial court erred in admitting the decedent's statement made two hours after the shooting at the hospital; and

(4) whether the trial court erred in admitting a video tape of the defendant's questioning by police.

## I.

■ Appellant claims his instruction on involuntary manslaughter should have been given. There is a two-step analysis that must be applied in determining the propriety of an instruction on a lesser offense. Each step must be satisfied before the instruction may be given. In the first step the statute and the charging information must be examined. The second step involves examining the evidence. The court in *Jones v. State* (1982), Ind., 438 N.E.2d 972, held that "the state through its drafting can foreclose as to the defendant, the tactical opportunity to seek a conviction for a lesser offense. The point is that absolute discretion rests in the state to determine the crime(s) with which a defendant will be charged." *Id.*, 438 N.E.2d at 975. The charging information in this case read:

"[O]n or about the 12th day of January, 1988 at the County of Elkhart and State of Indiana, one MICHAEL R. LYNCH did, then and there unlawfully commit the crime of murder by knowingly, unlawfully and feloniously shooting and killing one Duane L. Lynch, a human being, by then and there discharging a dangerous and deadly weapon, to-wit: a shotgun which the said Michael R. Lynch then and there held in his hands, and which shotgun was then and there loaded with gun powder and leaden ball, and the said Michael R. Lynch did then and there shoot the said Duane L. Lynch and then and there fatally wound him, and the said Duane L. Lynch did then and there languish and die in St. Joseph County, Indiana, on or about the 25th day of January, 1988; all of which is contrary to the form of the statute in such case made and provided, to-wit: I.C. 35–42–1–1."

It is obvious that the State sought only to charge the defendant for murder. Injecting the lesser offense would allow the jury to return a compromise verdict.

> *See:* *Sills v. State* (1984), Ind., 463
> N.E.2d 228;
> *Jones, supra.*

It was not error to refuse defendant's tendered Instruction No. 5 on involuntary manslaughter.

## II.

Appellant contends that the trial court committed error by not giving defendant's tendered Instruction No. 4 on reduced mental capacity, whether caused by mental illness, mental defect, intoxication, or any other cause. The following are excerpts from the court's instructions:

"No. 3:

To convict the Defendant, the State must have proved beyond a reasonable doubt each of the following elements:

The Defendant

  (1) knowingly

  (2) killed

  (3) another human being, to-wit:

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of Murder, a felony.

However, even if the State did prove each of the above elements beyond a reasonable doubt, and the Defendant also proved by a preponderance of the evidence that at the time of the offense, as a result of a mental disease or defect, he was unable to appreciate the wrongfulness of his conduct at the time of the offense, then you should find the Defendant not responsible by reason of insanity at the time of the offense.

Further, if you find that the State did prove each of the elements of the crime charged beyond a reasonable doubt, and you further find that at the time of the offense that the Defendant did not suffer from a mental disease or defect or that he was able to appreciate the wrongfulness of the conduct at the time of the crime, but you also find from the evidence beyond a reasonable doubt that he suffered from a psychiatric disorder which substantially disturbed his thinking, feeling, or behavior and impaired his ability to function or that he had a mental retardation, then you should find the Defendant guilty of Murder, but mentally ill at the time of the offense.

    *    *    *    *    *    *

No. 6:

In all cases in which the defense of insanity is interposed, the Jury may find whether the Defendant is:

  A) Guilty

  B) Not Guilty

  C) Not Responsible by reason of insanity at the time of the offense which means that a person is not responsible for having engaged in prohibited conduct if as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense. 'Mental Disease or Defect means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but does not include an abnormality manifested only by repeated unlawful or antisocial conduct.

  D) Guilty, but mentally ill at the time of the offense which means that the Defendant had a psychiatric disorder which substantially disturbed his thinking, feeling, or behavior and impaired his ability to function. 'Mentally Ill' includes having any mental retardation.

    *    *    *    *    *    *

No. 9:

You are instructed that the determination of whether a man is or is not held responsible for his conduct is not a medical, but a legal, judgment. Ideally, psychiatrists and psychologists, much like experts in other fields, should provide grist for the legal mill, should furnish the raw data upon which the legal judgment is based. It is the psychiatrist and psychologist who informs as to the mental state of the accused, his characteristics, his potentialities, his capabilities, but once this is disclosed, it is society as a whole, represented by the jury, which decides whether a man with the characteristics described should or should not be held accountable for his acts.

    *    *    *    *    *    *

No. 12:

You are instructed that the criminal law is an expression of the community's conscience or moral sense. It is important, therefore to remember that when considering a defense to criminal responsibility, the mere proof that a certain mental condition existed at the time of the act, or that there is some

causal connection between the mental state of the Defendant and the act itself is not enough. Rather there must be a showing that the Defendant's mind was so affected, that he failed to recognize and appreciate his duty to society by complying with its code of acceptable behavior."

Defense counsel gave notice of the defense of mental disease or defect before trial and proceeded at trial solely on this theory. The above instructions sufficiently advise the jury that it must determine if the defendant's mental capacity was impaired and what effect if any it had on his ability to form a criminal intent. The jury was also informed as to the proper verdicts depending on its determination of defendant's mental capacity.

■■■ However appellant contends that these instructions did not cover the effect that his alcohol consumption may have had on his ability to formulate the requisite mental state to be guilty of the crime. The trial court must determine whether an adequate evidentiary basis exists for an instruction on intoxication to be given. *Dalton v. State* (1981), Ind.App., 418 N.E.2d 544. Defense counsel relied solely on the defense of mental disease or defect at trial and never addressed the effect that defendant's intoxication may have had on his ability to formulate the requisite *mens rea.* In defendant's motion to correct error the failure to give an instruction covering intoxication was never mentioned. Similarly, appellant does not cite to any evidence that would support an instruction dealing with the effect his alcohol consumption may have had on his ability to formulate the requisite intent. The burden of substantiating that defendant was so intoxicated as to be incapable of formulating the requisite intent of the crime charged rests with the accused. *Dalton, supra.*

The court instructed the jury that the burden rested with the State to prove each element of the crime. The instructions listed each element of the crime and specifically explained the required *mens rea* that must be found before the defendant could be convicted. The court committed no error in refusing defendant's tendered Instruction No. 4.

### III.

Appellant next contends that the trial court erred in admitting decedent's statement made two hours after the shooting while the decedent was in the hospital. At the time of the statement, the decedent had been stabilized. Officer Campos testified that the decedent claimed his son shot him with a .410 shotgun and that it may have been the result of an argument prior to the shooting.

■■■ The trial court admitted the statement under the "res gestae" exception. "Res gestae" must be a spontaneous utterance made at the time of the accident, occurrence, or transaction to be admissible as an exception to the hearsay rule. *Cauldwell, Inc. et al. v. Patterson* (1961), 133 Ind.App. 138, 177 N.E.2d 490. The decedent's statement made two hours after the incident and at a different location was too far removed in time and place to be admissible as part of the res gestae.

> See: *Citizens' St. R. Co. of Indianapolis v. Stoddard* (1894), 10 Ind.App. 278, 37 N.E. 723;
>
> *Cleveland, C.C. & St. L.R. Co. v. Sloan* (1894), 11 Ind.App. 401, 39 N.E. 174;
>
> *Patterson, supra.*

■■■ The State argues that decedent's statement can be admissible as a dying declaration. Proof that declarations were made under sense of impending death is a necessary foundation for admission under the dying declaration exception. *McKee v. State* (1926), 198 Ind. 590, 154 N.E. 372. It must be shown that the declarant knew that death was certain or that he had given up hope for recovery. *Dean v. State* (1982), Ind., 432 N.E.2d 40. There is no evidence present in this case to show that decedent believed his death was certain. In fact, the decedent was stabilized at the time of the declaration. The statement made by decedent is not admissible as a dying declaration.

■ The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22.

The defendant admitted to shooting his father. Defense counsel raised the defense of insanity. It was then the jury's determination as to whether defendant's mental capacity was impaired and what effect, if any, it had on him when he shot his father. There is no substantial likelihood that the decedent's statements that his son shot him and the possible reason for the shooting contributed to the conviction. Thus, the admission of the statement was harmless error.

## IV.

■ For his final argument, appellant contests the admission of State's Exhibit No. 63. This exhibit was a video tape of defendant's questioning by the police after he was taken into custody. The defendant made the statement to police that he had been deer hunting and that the blood on his clothes was from a deer. Upon cross-examination by the State, the defendant admitted lying to the police during questioning about the deer hunting story. Thus, defendant acknowledged his prior inconsistent statement and the State's impeachment was accomplished.

However the State then admitted the video tape into evidence, over defense counsel's objection, for the purpose of impeachment. At this point the evidence was cumulative and unnecessary. In Indiana, it is well settled that the introduction of otherwise inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. *Mitchell v. State* (1972), 259 Ind. 418, 287 N.E.2d 860, 863. It is not likely that the admission of the video tape had a prejudicial impact upon the minds of the jury.

Affirmed.

BAKER, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I must dissent to the majority's decision on issue I and the trial court's refusal to give Lynch's tendered instruction on involuntary manslaughter as a lesser included offense.

As noted by the majority, we apply a two step analysis in determining the necessity of giving an instruction on a lesser offense.

In the first step the court determines whether the lesser offense in question is properly includible. If it is not, the inquiry ends and the instruction may properly be refused. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208.

If the lesser offense is includible, the court proceeds to the second step. It then determines whether under the evidence introduced at trial the jury might rationally determine that the lesser offense was committed but that the greater offense was not. *Hooper v. State* (1983), Ind., 443 N.E.2d 822. Thus, the emphasis in this inquiry is upon the element which distinguishes the greater from the lesser offense. Where the existence of that element could not be rationally disputed, the court may, again, properly refuse the instruction. *Jones v. State* (1982), Ind., 438 N.E.2d 972.

Returning to a consideration of the first step, lesser offenses are includible if they are either inherently included offenses or possibly included offenses and the factual allegations of the indictment or information charge all the elements of the lesser offense. *See, e.g., Leon v. State* (1988), Ind., 525 N.E.2d 331; *Jones, supra.*

While *Jones v. State* as cited by the majority contained the observation that through careful drafting of the information the state could foreclose the defendant from securing instructions on lesser offenses, the statement must be taken as no more than the corollary of the proposition that by including certain factual allegations the state can make some lesser offenses includible within the charge.

For instance, the prosecutor cannot through careful drafting foreclose a defendant concerning an inherently included offense. That is so because by definition any information adequately charging the greater offense necessarily charges the lesser.

In the case of Lynch the information clearly charged the lesser offense of involuntary manslaughter since it charged that he shot the victim (a battery) thereby causing his death. *See* IC 35–42–1–4.

Thus, our inquiry should shift to the second step. Was there evidence from which the jury might rationally have determined that Lynch committed involuntary manslaughter rather than murder?

It appears to me that there was sufficient evidence that Lynch was entitled to have the jury determine the question. Lynch testified to an intention to cause his father to be hospitalized because he felt that they might resolve problems between them. There was evidence of Lynch's mental instability. The evidence also established that the gunshot wound first struck the victim's arm before entering his chest.

Certainly the evidence before us is sufficient to sustain a conviction for murder. That, however, is not the point. There was a basis under the evidence for Lynch's requested instruction on involuntary manslaughter. They should have had the opportunity to consider that offense. As the Court stated in *Keeble v. United States* (1973), 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844, providing the jury with the third option of considering a lesser offense helps to insure that it will accord a defendant the full benefit of the reasonable doubt standard.

I would therefore reverse and order a new trial.