**James THOMPSON, Appellant–
Petitioner,**

**v.**

**STATE of Indiana, Appellee–
Respondent.**

No. 49A05–0211–PC–563.

Court of Appeals of Indiana.

Oct. 7, 2003.

Rehearing Denied Dec. 1, 2003.

Eugene C. Hollander, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

James Thompson ("Thompson") appeals the post-conviction court's denial of his petition for a new trial.

We affirm.

### ISSUE

Whether the trial court erroneously denied Thompson's post-conviction petition for a new trial.

### FACTS

On December 2, 1980, Thompson was charged with the offenses of murder, felony murder, and robbery.

A brief summary of the facts from the record most favorable to the state shows that [Thompson] and two friends, Gary Burris and Emmett Merriweather, were

playing pool and talking at the M & J Social Club in Indianapolis on the evening of January 29, 1980. They asked an employee to call a cab for them so they could go to a party they knew about. Both [Thompson] and Burris had pistols on them. When the cab arrived, Burris got into the front seat and Merriweather and [Thompson] got into the back. Burris gave the driver directions and eventually had him pull into an alley. [Thompson] said, "This is not good enough," and when Merriweather asked what wasn't good enough, [Thompson] told him to be quiet. Burris forced the driver to get into the back seat while Merriweather got into the front right seat and [Thompson] drove the cab.

They drove around for approximately half an hour as Burris took the clothes off the cab driver, kept items of value, and then threw the clothes out of the window. At one point the cab driver pleaded with them, saying, "You can take my money, but just please don't hurt me." Eventually they pulled into another alley, where Burris and [Thompson] beat the cab driver on the head until he became unconscious. Burris then pulled the cab driver out of the cab, bound his hands behind his back, and shot him in the head. Merriweather argued with Burris and [Thompson] and said they would not get away with this murder. He got out of the cab and walked back to the apartment of a friend, Carol Wilkins. [Thompson] and Burris also returned to Wilkins's apartment and had in their possession a cab driver's run sheet, a leather jacket, and a silver watch which they had not had before they left. The cab driver's nude body was found in the alley the next morning. Merriweather testified at trial to all of the above events pursuant to a plea agreement.

*Thompson v. State,* 441 N.E.2d 192–193 (Ind.1982).

Prior to Thompson's trial, Gary Burris had been convicted of murder and sentenced to death. On April 15, 1981, co-defendant Merriweather entered into a plea agreement with the State in which he agreed to testify against Thompson in exchange for an executed fifteen-year sentence for robbery. On April 28, 1981, after trial by jury, in which Thompson apparently did not testify, Thompson was convicted of felony murder and subsequently sentenced to fifty years. Our supreme court affirmed Thompson's sentence and conviction. *See Id.*

On August 27, 1981, Burris wrote Thompson a letter from prison in which he suggested that Thompson use his testimony as newly discovered evidence because what Burris had to say would make a jury decide differently. Burris also suggested to Thompson that if he got a new trial that Thompson should not take the witness stand because Burris' testimony would likely set Thompson free. On November 14, 1990, Thompson filed his initial petition for post-conviction relief. In that petition, he argued that he had been denied effective assistance of counsel resulting in due process and due course of law violations. On November 20, 1997, Burris was executed. Burris' last statement, as taken by personnel of the Department of Correction, reads as follows:

> Hopefully the Chambers family will find peace. James Thompson did not know what was going on. I wish the world well. He smiled and said, 'Beam me up.'

(Pet.Ex.2).

On October 10, 2001, Thompson amended his petition for post-conviction relief. In his amended petition, he argued that Burris' last statement was a "dying declaration" constituting newly discovered evi-

dence that exonerated him from "the knowing participation in the killing" of Chambers. App. 61.

On March 27, 2002, the post-conviction court held an evidentiary hearing on Thompson's petition and admitted Burris' statement into evidence. On July 5, 2002, the post-conviction court denied the petition and entered its findings of fact and conclusions of law. Specifically, the court found that Burris' statement (1) was not credible; (2) could not be reproduced at trial because it would be inadmissible hearsay; and (3) would not produce a different result upon retrial because it was unreliable and vague. The post-conviction court concluded

> that Petitioner cannot prevail because he fails to satisfy—at the least—prongs seven, eight, and nine of the newly discovered evidence test.

App. 22.

### DECISION

Thompson argues that the post-conviction court erroneously denied his petition. Specifically, he argues that the post-conviction court should have granted his petition because Burris' statement was credible and (1) it would have refuted Merriweather's testimony; (2) it was capable of being reproduced at a new trial because the post-conviction court had admitted the statement into evidence as a "dying declaration," an exception to the rule against hearsay; and (3) it would result in a new trial because it is clear that only Burris committed the killing. Additionally, Thompson argues that the post-conviction court failed to fairly evaluate his claims because it adopted verbatim the State's proposed findings.

■ A petitioner for post-conviction relief bears the burden of proving by a preponderance of the evidence that he is entitled to relief. *Moody v. State*, 749

N.E.2d 65 (Ind.Ct.App.2001) *trans. denied.* "On appeal from the denial of a petition for post-conviction relief, we neither reweigh the evidence nor judge the credibility of the witness." *Id.* at 67. In order to prevail on appeal, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law." *Id.* at 67.

■ In order for newly-discovered evidence to merit relief, the claimant must establish *each* of the following prongs: (1) that the evidence was not available at trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Wisehart v. State*, 693 N.E.2d 23, 33–34 (Ind. 1998).

■ Here, we cannot say that the post-conviction court's denial of Thompson's petition was contrary to law. First, the trial court did not find Burris' so called "dying declaration" worthy of credit. Burris had sent a letter to Thompson, as early as 1981, suggesting that Thompson seek a new trial based on testimony Burris would give. Even after Burris' execution in 1997, Thompson apparently thought Burris' declaration carried little if any credibility, because another four years elapsed before he amended his petition on October 10, 2001 to include Burris' declaration. In essence,

almost two decades had elapsed before Thompson filed his amended petition to include what he already knew Burris would testify to when he was alive. As a result, we also do not find that Burris' planned declaration is worthy of credit.

■ Secondly, even though the post-conviction court erroneously admitted Burris' statement as a "dying declaration" at the hearing, we conclude that Burris' statement does not qualify as a dying declaration and cannot be produced at a new trial. Hearsay is an out of court statement offered for the truth of the matter asserted and is generally not admitted into evidence. Ind. Evidence Rule 801(c). However, a dying declaration is an exception to the hearsay rule and is admissible if the declaration is made by the "declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." Ind. Evidence Rule 804(b)(2).

■ Indiana case law and commentators to the Indiana Rules of Evidence make clear that the contemporary purpose for admitting dying declarations into evidence is based on the grounds of necessity (the declarant having died) and on the assumed guarantee that a person expecting imminent death, similar to a person testifying under oath, will tell the truth because of the powerful psychological forces brought to bear at the moment of death. Weissenberger Glen, Indiana Evidence 2001 Courtroom Manual 314 (Anderson Publishing Co.) (2000); *See* Charles E. Torcia, Wharton's Criminal Evidence § 315 (13th ed.1972); 5 Wigmore, Evidence § 1438 (Chadbourn rev.1974). Therefore, in determining whether a statement qualifies as a dying declaration, it is imperative that the trial court review and carefully scrutinize the circumstances surrounding the making of the statement in assessing the declarant's then state of mind regarding belief of his impending death. Thus, it is essential that the declarant's statement be made while believing that his death is imminent. *Dean v. State,* 432 N.E.2d 40 (Ind.1982). As such, the trial court may infer a belief of imminent death by considering the declarant's statement of belief of his impending death, *Id.;* the declarant's conduct and physical condition at the time the statement is made, *McKee v. State,* 198 Ind. 590, 154 N.E. 372 (1926); the nature or gravity of the injury having been suffered by the declarant, *Gipe v. State,* 165 Ind. 433, 75 N.E. 881 (1905); or statements made by the declarant to a treating physician after being informed of imminent death, *Gammack v. State,* 211 Ind. 208, 6 N.E.2d 328 (1937). The time between the declarant's statement and death does not normally affect its admissibility. *Jones v. State,* 71 Ind. 66 (1880) (written statement of victim identifying shooter was admissible even though victim died 14 days after shooting). Finally, it is also essential that the declarant's statements relate to the cause or circumstances giving rise to his fatal injury; it may not include what happened before or after the act. *Montgomery v. State,* 80 Ind. 338 (1881). Because Burris' declaration does not appear to fit any of the preceding situations and did not concern what he believed to be the cause or circumstances of his impending death, his declaration would be inadmissible hearsay. In *Dean,* the victim was dying from a gunshot wound to the back when asked what type of weapon was used. The victim stated that he thought it was a revolver because "he had seen a gun in the guy's hand." 432 N.E.2d at 45. In that case, our supreme court held that the statement was properly admitted as a dying declaration because the victim's statement was directly related to his belief as to what had

caused his impending death. Here, Burris' statement did not address what he believed to be the cause of his imminent execution.[1]

 We also find that Burris' declaration would not likely produce a different result in a new trial. "In ruling on whether the evidence would produce a different result, the trial court may properly consider the weight that a reasonable trier of fact would give it and while so doing may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case." *Martin v. State*, 784 N.E.2d 997 (Ind.Ct.App.2003). The post-conviction court found that not only was Burris' statement vague, but that Merriweather's and Carol Wilkins' testimony at trial (that Burris gave Thompson a gun, that Thompson drove the cab while Burris held a gun on Chambers, and that Thompson had Chambers' jacket the following morning) supported the jury's conclusion that Thompson was guilty. As our supreme court noted in its opinion concerning Thompson's direct appeal, Thompson was not convicted of murder, but felony murder. *Thompson*, 441 N.E.2d 192.

> It is clear in this case that the shooting of the cab driver occurred before [Thompson] and his accomplices carried away any of the victim's possession's. Furthermore, the robbery and the shooting were so closely connected in point of time, place, and continuity of action as to be one continuous transaction.

*Id.* at 194. As a result, Burris' declaration would not produce a different result.

 Finally, admitting Burris' declaration would merely serve as an attempt to impeach State's witnesses Merriweather and Williams at a new trial. Thompson concedes this point in his brief. However, as previously stated, for purposes of admissibility, newly discovered evidence cannot be merely impeaching. *Wisehart*, 693 N.E.2d at 33–34.

 Thompson also argues that the post-conviction court "failed to fairly evaluate the issues" because it adopted verbatim the State's proposed findings. Thompson's Br. at 11. While this practice is not prohibited, our supreme court has noted that the wholesale adoption of one party's findings erodes confidence that they reflect the considered judgment of the post-conviction court. *Stevens v. State*, 770 N.E.2d 739 (Ind.2002). Here, the post-conviction court's findings are not a wholesale adoption of the State's proposed findings. The post-conviction court deleted portions of several findings and included facts that were not in the proposed findings. As in *Stevens*, "[i]t is thus evident that the court carefully considered and purposefully used of the individual findings proposed by the State." 770 N.E.2d at 762. Therefore, we decline to find that the post-conviction court failed to fairly evaluate Thompson's claims.

Affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

---

1. We also note that a dying declaration, as used in criminal proceedings, normally comes from a victim who has suffered a fatal wound and subsequently utters a statement related to the cause of their injury. *See Dean; Gerrick v. State*, 451 N.E.2d 327 (Ind.1983); *Hoskins v. State*, 268 Ind. 290, 375 N.E.2d 191 (Ind. 1978); *Southerland v. State*, 209 Ind. 308, 197 N.E. 841 (1935); *Anderson v. State*, 205 Ind. 607, 186 N.E. 316 (1933). While we do not foreclose the possibility that a statement made by a death row inmate may properly be admitted as a dying declaration in a criminal proceeding, the facts of this case do not qualify Burris' statement as such.

SULLIVAN, Judge, concurring in part and dissenting in part.

The murder took place during and in the course of the robbery. Thompson was armed with a pistol and clearly participated in the robbery even though he was not the shooter. He is, therefore, guilty of felony murder even if credit be given to Burris's pre-execution statement. *Jenkins v. State,* 726 N.E.2d 268 (Ind.2000); *Jackson v. State,* 597 N.E.2d 950 (Ind.1992), *cert. denied,* 507 U.S. 976, 113 S.Ct. 1424, 122 L.Ed.2d 793 (1993); *Seeley v. State,* 544 N.E.2d 153 (Ind.1989). The statement that "James Thompson did not know what was going on" does not imply that Thompson was not present or that he did not participate in the robbery. *See* slip op. at 3. It is susceptible only to the inference that Thompson was not aware that Burris intended to assassinate Chambers.

With regard to Burris's statement, I agree that the substance of the Burris statement was not newly discovered and that therefore it would not have been error to have excluded it during post-conviction proceedings. The statement was, however, admitted, and in discussing it the majority here concludes that it was not a dying declaration because it "did not concern what he believed to be the cause or circumstances of his impending death … [and that the statement] did not address what he believed to be the cause of his imminent execution." Slip op. p 7–8. I respectfully disagree.

I believe it to be without question that the cause of his imminent execution was that he murdered Mr. Chambers. The Burris statement in that regard, that Thompson did not know "what was going on," clearly concerned the murder of Chambers, i.e. "the cause or circumstances of [Burris's] impending death." It therefore fell within the hearsay exception of Ind. Rules of Evidence 804(b)(2).

Nevertheless, I concur in the conclusion of the majority that admission of Burris's declaration at a retrial for Thompson would merely serve to impeach the testimony of Merriweather concerning Thompson's participation in the criminal activities leading up to and following the death of Chambers. For this reason I agree that the Burris statement would not likely produce a different result.

Notwithstanding my disagreement as to whether the Burris statement was a dying declaration, I fully concur that the post-conviction court did not err in refusing to grant relief.